[Civ. No. 28786.   Second Dist., Div. Two.   Dec. 21, 1965.]

JOHNNIEMAE PATTERSON TIETZ et al., Plaintiffs and Appellants, v. LOS ANGELES UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

`Arthur E. Briggs and J. B. Tietz for Plaintiffs and Appellants.

Harold W. Kennedy, County Counsel, Veatch, Thomas, Carlson & Dorsey, and Henry F. Walker for Defendants and Respondents.

ROTH, J.—Plaintiff herein, JohnnieMae Patterson Tietz, is a certificated teacher and certificated librarian and for more than 10 years prior to April 7, 1962, was employed as

and was acting as the librarian of the Nathaniel Narbonne High School, a senior high school in what is currently termed Los Angeles Unified School District. In various causes of action she alleges and prays for damages in excess of $500,000. Plaintiff J. B. Tietz is the husband of JohnnieMae and joins in the complaint in some of the causes of action and alleges and prays for total damages in the sum of $33,590.39. Both plaintiffs also pray for punitive damages, but do not name the amount. Both plaintiffs will hereinafter sometimes be referred to as appellants.

This appeal is taken from judgments of dismissal after sustaining the demurrers of respondents Los Angeles Unified School District, Board of Education of the City of Los Angeles (herein called "public school agencies"), and respondents Evelyn L. Marienthal, Phyllis O. Morey (herein called "wives") without leave to amend, and from judgments of dismissal after sustaining the demurrer of respondents Michael J. Marienthal and Herbert E. Morey (herein called "principals") with leave to amend, appellants having failed to amend within the allotted time. The public school agencies and the wives had demurred to two previous complaints, and all parties demurred to the second amended complaint after which judgments were entered.

■ The allegations of all causes of action in the complaint aside from the element of damage, referred to in the different causes of action, are substantially the same.

Mrs. Tietz had permanent tenure as a teacher and a librarian at Narbonne High School in Los Angeles. Principals Michael Marienthal and Herbert Morey were vice-principal and principal, respectively, of Narbonne. During the first quarter of 1962 principals threatened appellant in order to induce her to transfer to another school. The threats were made pursuant to a plan to coerce by threats and duress teachers with seniority greater than that of the principals to transfer from Narbonne. In March of 1962, the principals interviewed Mrs. Tietz and stated that her application for a sabbatical had been approved but that on her return "We advise you to transfer." In reply to Mrs. Tietz's request for reasons "they [principals] falsely stated to her that certain supervisors had given bad reports and ratings of her work, . . ." In addition, principals "grilled her with accusatory questioning of her work as librarian, and pretending to use a number of 3 x 5 cards which were in their hands and

falsely claiming that each represented in detail a reported transgression or dereliction of her duties as librarian and teacher; . . .''

Mrs. Tietz's complaint alleges further that she had a fine record, no prior difficulty and that ''said claims, which threatened grounds for discipline, dismissal or removal of [appellant] from her said position . . .'' were known to be false by the principals and intended to harm her. She asserts mental distress and physical injury, and prays for general and special damages. J. B. Tietz, her husband, also asked for general and special damages.

The public school agencies were named as defendants in addition to the principals, on the theories of *respondeat superior* and negligence in hiring the principals. The wives of the principals were named defendants as coconspirators, with their husbands. We find nothing in any of the causes of action to sustain a theory of conspiracy. The judgment of dismissal entered upon a demurrer sustained without leave is proper. This facet of the litigation will be further treated (*infra*).

The sole issue before us insofar as the principals are concerned, is whether the principals functioned within a discretion inherently or by law made a part of their respective positions.

Severing the ultimate facts alleged in the complaint from conclusions and recitals therein, there is no doubt in our minds that the principals were performing the functions and assuming the responsibilities for which they are employed.

The State Board of Education has promulgated certain rules for the government of the public schools in this state, among which are the following, found in the California Administrative Code, title 5, chapter 1:

Article 3, section 16: ''Responsibility of Principal. The principal is responsible for the supervision and administration of his school.''

Article 8.7, section 78.9: ''Functions of Certain Administrative and Supervisory Positions in School Districts.''

''(m) Principal. A position entitled 'principal' . . . has the following function: To serve . . . as chief executive officer of one or more schools with *total responsibility* to manage all affairs of the school, including *general control and supervision of all certificated and classified employees* assigned to serve in the school. [Italics added.]

"(n) Vice-Principal. A position entitled 'vice-principal' . . . has the following functions:

"(1) To perform for the principal such duties of the principal as the latter may delegate to him. . . ."[1]

The law of governmental immunity, as it applies to both governmental agencies and officials, is stated in *Lipman* v. *Brisbane Elementary School Dist.*, 55 Cal.2d 224, at p. 229 [11 Cal.Rptr. 97, 359 P.2d 465]: "In *Muskopf* v. *Corning Hospital Dist., ante*, p. 211 [11 Cal.Rptr. 89, 359 P.2d 457], we held that the rule of governmental immunity may no longer be invoked to shield a public body from liability for the torts of its agents who acted in a ministerial capacity. But it does not necessarily follow that a public body has no immunity where the discretionary conduct of governmental officials is involved. While, as pointed out in the Muskopf case, a governmental agent is personally liable for torts which he commits when acting in a ministerial capacity, a different situation exists with respect to discretionary conduct. Because of important policy considerations, the rule has become established that government officials are not personally liable for their discretionary acts within the scope of their authority even though it is alleged that their conduct was malicious. (*Hardy* v. *Vial*, 48 Cal.2d 577, 582-584 [311 P.2d 494]; *Coverstone* v. *Davies*, 38 Cal.2d 315, 322 [239 P.2d 876]; *White* v. *Towers*, 37 Cal.2d 727, 730-732 [235 P.2d 209, 28 A.L.R.2d 636]; see *Barr* v. *Matteo*, 360 U.S. 564, 569, et seq. [79 S.Ct. 1335, 3 L.Ed.2d 1434]). The subjection of officials, the innocent as well as the guilty, to the burden of a trial and to the danger of its outcome would impair their zeal in the performance of their functions, and it is better to leave the injury unredressed than to subject honest officials to the constant dread of retaliation. (*Hardy* v. *Vial*, 48 Cal.2d 577, 582-583 [311 P.2d 494].)"

The court in the *Lipman* case points out: "[T]his rule applies not only to acts essential to the accomplishment of the main purposes for which the office was created but also to acts which, although only incidental and collateral, serve to promote those purposes. (*White* v. *Towers*, 37 Cal.2d 727, 733 [235 P.2d 209, 28 A.L.R.2d 636].)" (*Id.* at p. 233; see also *Elder* v. *Anderson*, 205 Cal.App.2d 326, 333 [23 Cal.Rptr. 48].)

---

[1]Appellants themselves allege on information and belief that "said aforedescribed wrongful conduct of defendants Michael J. Marienthal and Herbert E. Morey was within the scope of their duties."

If appellant's work had indeed been unsatisfactory, it is obvious that respondent principals would have been acting within the scope of their duties in conducting an interview in which appellant was taken to task. Assuming arguendo that the conduct alleged goes beyond the bounds of permissible personnel supervision and proper discretion, to allow an action of this nature to be maintained for the purpose of determining the truth of allegations which contest and challenge the propriety used in the exercise of a discretion which exists, would be to frustrate the very purpose of the immunity. In this respect we quote the oft-repeated words of Judge Learned Hand in *Gregoire* v. *Biddle,* 177 F.2d 579, 581: "It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. . . ." We hold, therefore, that the second amended complaint failed to state a cause of action against the respondent principals, who were immune from suit, and that the judgments of dismissal in favor of principals following appellant's failure to amend, were proper. (Code Civ. Proc., § 581, subd, 3.)

The governmental immunity of the public school agencies is governed by other principles of law. In *Lipman* v. *Brisbane Elementary School Dist., supra,* the court at pages 229-230 says: "The immunity of the agency from liability for discretionary conduct of its officials, however, is not coextensive with the immunity of the officials in all instances. (See 3 Davis, Administrative Law Treatise (1958), 482-505, 542-544; 2 Harper and James, The Law of Torts, 1640-1642, 1657-1665; Hall and Wigmore, *Compensation for Property Destroyed to Stop the Spread of Conflagration* (1907), 1 Ill. L.Rev. 501, 514 et seq.) The danger of deterring official action is relevant . . . but is not decisive of that issue. It is unlikely that officials would be as adversely affected in the performance of their duties by the fear of liability on the

part of their employing agency as by the fear of personal liability. The community benefits from official action taken without fear of personal liability, and it would be unjust in some circumstances to require an individual injured by official wrongdoing to bear the burden of his loss rather than distribute it throughout the community. . . ."

Nevertheless we need not decide whether, in the present case, governmental immunity should attach to the respondent public school agencies, for we determine that appellant has failed to state a cause of action against them on other grounds.

Government Code section 905[2] provides: "There shall be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of this part *all claims for money or damages* against local public entities except:

"(d) Claims for which the workmen's compensation authorized by Division 4 (commencing with Section 3201) of the Labor Code is the *exclusive remedy*." (Italics added.)

Government Code section 945.4[3] provides: ". . . no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity. . . ."

The cases establish without question that failure to file such a claim is fatal to the cause of action. (*Redlands High School Dist.* v. *Superior Court*, 20 Cal.2d 348, 358 [125 P.2d 490] and cases cited therein; *Kornahrens* v. *City & County of San Francisco*, 87 Cal.App.2d 196 [196 P.2d 140].) Appellant's failure to allege that such a claim was presented subjected the complaint to a general demurrer. (*Dias* v. *Eden Township Hospital Dist.*, 57 Cal.2d 502 [20 Cal.Rptr. 630, 370 P.2d 334].)

Appellants argue, however, that section 905 and 945.4 of the Government Code do not require the presentation of claims based on intentional torts, but are restricted to suits for negligence. We see no basis for such a construction. The sections involved require the presentation of a claim "for money or damages" which on its face includes actions for either negligence or intentional torts. Moreover, the prede-

---

[2]Added by Stats. 1963, ch. 1715, § 1. At the time the alleged cause of action accrued it was Gov. Code, § 703, in substantially the same form.

[3]Added by Stats. 1963, ch. 1715, § 2. At the time the alleged cause of action accrued, it was Gov. Code, § 710 in substantially the same form.

cessors of these sections were placed in the Government Code in 1959 in substantially the same form as they exist today.

At the same time section 801[4] was added to the Government Code, which read: "Whenever it is claimed that any person has been injured or any property damaged as a *result of the negligence or carelessness* of any public officer or employee occurring during the course of his service or employment . . . [a verified claim must be presented]." (Italics added.) While the preceding section referred only to public officers or employees, it contains limiting language, which, when compared to the broad language of the sections in dispute promulgated at the same time and within the same statutory scheme, conclusively demonstrates that it was the intention of the Legislature to include claims for intentional torts within the phrase "claims for money or damages."

Appellants also contend that their claim is excepted from the requirement of presentation by the language of section 905, subdivision (d), *supra,* which refers to claims for which workmen's compensation is the "exclusive remedy." This argument, however, proves too much. For if the nature of appellants' action is such that the workmen's compensation law is the exclusive remedy, then they have no common law rights to pursue in the superior court (see *Alaska Packers Assn.* v. *Industrial Acc. Com.,* 200 Cal. 579, 583 [253 P. 926], affd. 276 U.S. 467 [48 S.Ct. 346, 72 L.Ed. 656]; *Bartlett Hayward Co.* v. *Industrial Acc. Com.,* 203 Cal. 522, 535 [265 P. 195]; *Scott* v. *Industrial Acc. Com.,* 46 Cal.2d 76, 85 [293 P.2d 18]), and the demurrer must be sustained for lack of jurisdiction.

It is to be noted that the demurrer of the public school agencies to appellants' second amended complaint was sustained without leave to amend. This was not an abuse of discretion, however, since two prior complaints had been struck down on the ground that appellants failed to allege the required presentation of the claim. Obviously, appellants could not truthfully allege that they had complied with this prerequisite, and leave for further amendment would have been a fruitless gesture. (*Johnson* v. *Ehrgott,* 1 Cal.2d 136, 138 [34 P.2d 144]; *Ruinello* v. *Murray,* 36 Cal.2d 687, 690 [227 P.2d 251]; *Willson* v. *Security-First Nat. Bank,* 21 Cal.2d 705, 711 [134 P.2d 800].)

The final issue in the case at bench is whether the court

---

[4]Repealed by Stats. 1963, ch. 1715, § 6.

acted properly in sustaining the demurrer of the wives without leave to amend. Appellants' sole ground for joining them in this action is that they "did . . . aid, abet and conspire with said defendants principal and vice-principal in their aforesaid acts and plans. . . ." ▉ As stated in *Agnew* v. *Parks,* 172 Cal.App.2d 756, at p. 762 [343 P.2d 118] : "The long-established rule that a conspiracy, in and of itself, however atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage (*Herron* v. *Hughes,* 25 Cal. 555) requires a determination of whether the pleaded facts show something was done which, without the conspiracy, would give rise to a right of action (*Orloff* v. *Metropolitan Trust Co.,* 17 Cal.2d 484 [110 P.2d 396] ; *Mox Incorporated* v. *Woods,* 202 Cal. 675 [262 P. 302] ; *Schaefer* v. *Berinstein,* 140 Cal.App.2d 278 [295 P.2d 113] ; *Perry* v. *Meikle,* 102 Cal.App.2d 602 [228 P.2d 17]). The only purpose of the pleader in employing a conspiracy is to link together and make equally liable with him who carries out the scheme one who has agreed to a common design to commit a wrong (*Mox Incorporated* v. *Woods,* 202 Cal. 675 [262 P. 302] )."

▉ In the present case, no right of action is stated against the actual perpetrators of the alleged wrong, and no facts are pleaded showing any direct action by the conspirators. As it appears from the complaint, the only conduct of the wives which would subject them to liability is that they aided, abetted and conspired, in some mysterious way, with their husbands in order to harm the appellants. If no cause of action is stated against the husbands, it seems only too obvious that the mere act of conspiracy, without more, would not be actionable against the wives. (Cf. *Hardy* v. *Vial,* 48 Cal.2d 577, 584 [311 P.2d 494], where the conduct of the coconspirator as alleged, gave rise to a cause of action against him independent of the conspiracy.)

We hold, therefore, that the judgments of dismissal were properly entered, and are affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied January 6, 1966, and appellants' petition for a hearing by the Supreme Court was denied February 16, 1966.