[Civ. No. 8917. Fourth Dist., Div. Two. June 18, 1968.]

DON WIDDOWS, Plaintiff and Appellant, v. ALBERT KOCH et al., Defendants and Respondents.

---

George Cheney for Plaintiff and Appellant.

Thompson & Colegate, Don C. Brown and Gerald D. Shoaf for Defendants and Respondents.

KERRIGAN, J.—The plaintiff is engaged in the business of offering ambulances for hire to the general public in the desert community of Barstow, California. Although not pleaded, the parties concede that on March 17, 1966, the plaintiff advised the officials of the City of Barstow that his labor costs would be increased by reason of a rule of the U. S. Department of Labor involving the payment of premium wages to all ambulance employees working around-the-clock, and that because of such increase, his multi-unit ambulance service would require the grant of a $25,000 annual subsidy from the city. The city refused to subsidize the plaintiff and the latter threatened to close his business as of March 31. However, instead of going out of business entirely, plaintiff reduced his service to a single unit manned by one crew. This ambulance was available for public hire 24 hours a day, 7 days a week.

In early May, the Barstow City Council moved to expand competition in the public ambulance service by offering the defendant Kenneth Crippen, an ambulance operator doing business in the community of Victorville, the privilege of stationing one of his ambulance crews and units on city property. Thereafter, the city officials caused the following written directive to be posted at Barstow Community Hospital, a facility owned and operated by the city:

"Effective at 9 :00 A.M., Saturday, May 21, 1966, and thereafter until further notice, the following procedures *will* be followed in calling for an ambulance to transport patients from the Barstow Community Hospital:

"1. Unless a doctor or patient or person authorized to act for a patient specifically requests Desert Ambulance [plaintiff's ambulance service] for patient transportation, Barstow

. . . Ambulance [defendant Crippen's firm] will be called for through the Barstow Police Department at 256-2211. If Barstow Ambulance . . . is not available, only then is Desert Ambulance to be called.

"2. No hospital employee may suggest Desert Ambulance in any manner unless absolutely certain that Barstow Ambulance is not available.

"3. No hospital employee may in any way hamper or interfere with any ambulance operator or crew in the fulfillment of his service obligation to the patient.

"4. All hospital personnel are reminded that the Barstow Community Hospital is a function of the City of Barstow and is governed by the City Council. The undersigned is the officially authorized agent of the City Council.

"5. Any hospital employee calling an ambulance is to file with the Hospital Administrator a note showing the patient's name, the name of the doctor on the case, the name of the ambulance service called and the time and date called. If Barstow Ambulance . . . is not used, the note is to state the reason for not using that service. The note is to show the signature of the person making the call requesting ambulance service.

"6. The Hospital Administrator, the Director of Nurses, and the Shift Supervisor will be held responsible for making certain that all employees concerned with calling for ambulance service is [sic] aware of the above requirements and procedures. . . ."

The foregoing directive remained in effect from May 20 to October 6, 1966, when it was rescinded.

In the interim, after the submission and rejection of a claim for damages against the city officials, plaintiff filed the instant action. The plaintiff's suit contained four causes of action and named Albert Koch, Administrator of the Barstow Community Hospital, James O. Tennant, Barstow City Manager, H. James Gilliam, Mayor of Barstow, and Crippen as defendants.

The first cause of action stated in substance that: During the period May 20 and October 6, 1966, the city officials agreed and conspired with Crippen to restrict competition in the private ambulance service to the public for hire; the city officials perpetrated an overt act in furthering the conspiracy by issuing the foregoing written command of May 20, directed to all hospital personnel; the conspiracy was formed and furthered for the purpose of injuring plaintiff in his business of supplying ambulance service to the Barstow public and for

the purpose of restricting competition and creating a monopoly in favor of Crippen's ambulance service; the conspiracy was in violation of common law antitrust principles and the Cartwright Act; the conspiratorial acts of the city officials were accomplished within the course and scope of their employment; none of said conspiratorial acts were "discretionary" in character; as a proximate result thereof, plaintiff was deprived of receiving numerous calls and requests for ambulance service at the Barstow Community Hospital; therefore, plaintiff was entitled to general and punitive damages from all the defendants.

The second cause of action differed significantly from the first cause of action only in that plaintiff alleged that the defendant-officials, to wit, the hospital administrator, mayor and city manager, by engaging in such conspiracy together and with the defendant-Crippen, departed from the course and scope of their employment as civil servants and became private tortfeasors as a consequence thereof; this purported cause of action sought recovery of damages only from the individual defendants, but not from the city.

The third cause of action was directed against the city only and charged that: the defendant-officials were acting within the course and scope of their employment in carrying out the conspiracy; the city was alerted to the fact that the officials were restricting competition in the private ambulance service business in the Barstow geographical area when plaintiff filed his proof of claim with the city on August 24; nevertheless, the city withheld any action tending to stop such injurious acts upon the part of its officials; in failing to take interdicting action after gaining knowledge of the conspiracy, the city ratified its officials' tortious conduct and was thereby estopped from denying liability for the wrongful acts of its officials.

The fourth cause of action charged that an actual controversy had arisen between the parties inasmuch as plaintiff maintained that he was entitled to recover damages by reason of the existence of the conspiracy, and the defendant-city and its officials claimed that they were entitled to immunity under the provisions of the California Tort Claims Act. In the alternative, of the plaintiff sought a declaration that said act was unconstitutional as being violative of both the State Constitution and the U. S. Constitution.

The competing ambulance owner, Crippen, filed an answer to the plaintiff's complaint and, consequently, is not involved

234

as a party on appeal. However, the remaining defendants, consisting of the city entity and the officials thereof, filed a general demurrer to the third amended complaint, and the same was sustained without leave to amend.

All four counts set forth in the complaint sound in conspiracy to restrain trade. Where a complaint charges a conspiracy and the commission of a wrongful act, the only significance of the conspiracy charge is that each member may be held responsible as a joint tortfeasor, regardless of whether or not he directly participated in the act. (*Tietz* v. *Los Angeles Unified School Dist.*, 238 Cal.App.2d 905, 913 [48 Cal.Rptr. 245] (reh. den. 385 U.S. 964 [17 L.Ed.2d 309, 87 S.Ct. 389]); *Wise* v. *Southern Pac. Co.*, 223 Cal.App.2d 50, 64 [35 Cal.Rptr. 652].) A conspiracy, in and of itself, however atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage. It requires a determination of whether the pleaded facts show something was done which, without the conspiracy, would give rise to a right of action. (*Mox, Inc.* v. *Woods*, 202 Cal. 675, 677 [262 P. 302]; *Agnew* v. *Parks*, 172 Cal.App.2d 756, 762 [343 P.2d 118]; *Schaefer* v. *Berinstein*, 140 Cal.App.2d 278, 293 [295 P.2d 113].)

 The California law of antitrust (Bus. & Prof. Code, § 16700, et seq.), commonly known as the Cartwright Act, is patterned upon the federal Sherman Act, and both have their roots in the common law. (*Apex Hosiery Co.* v. *Leader*, 310 U.S. 469, 498 [84 L.Ed. 1311, 1325, 60 S.Ct. 982, 995, 128 A.L.R. 1044]; *Rolley, Inc.* v. *Merle Norman Cosmetics*, 129 Cal.App.2d 844, 849 [278 P.2d 63, 282 P.2d 991].) Therefore, federal cases interpreting the Sherman Act are applicable to the Cartwright Act. (*Milton* v. *Hudson Sales Corp.*, 152 Cal. App.2d 418, 440 [313 P.2d 936].)

The Cartwright Act provides: "A trust is a combination of capital, skill or acts by two or more persons for any of the following purposes: (a) To create or carry out restrictions in trade or commerce . . . (c) To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity. . . ." (Bus. & Prof. Code, § 16720.) "Except as provided [herein] . . . every trust is unlawful, against public policy and void." (Bus. & Prof. Code, § 16726.) "Persons" are defined as ". . . corporations, firms, partnerships, and associations existing under or authorized by the laws of this State or any other State, or any foreign country." (Bus. & Prof. Code, § 16702.)

It may be assumed for present purposes that the action of the city officials in issuing the memorandum directed to hospital personnel would be violative of the Cartwright Act if undertaken by a combination of private persons, individual or corporate. It may also be assumed, without deciding, that the Legislature could, in the exercise of its police power, prohibit a city from preferring one competitor over another because of the adverse effect thereof on competition. It is clear, however, that the Legislature has refrained from taking this prohibitory action. There is nothing in the language of the Cartwright Act which suggests that its purpose is to restrain a municipality or its agents from engaging in activities ordered by the city's governing body. The act is only applicable to ''persons'' and defines ''persons'' to include corporations, firms, partnerships and associations.

In *Parker* v. *Brown,* 317 U.S. 341 [87 L.Ed. 315, 63 S.Ct. 307], the Supreme Court held the Sherman Act inapplicable to California's Agricultural Prorate Act, which restricted competition among raisin growers and set minimum prices. ''There is no suggestion of a purpose to restrain state action in the Act's legislative history. The sponsor of the bill which was ultimately enacted as the Sherman Act declared that it prevented only 'business combinations.' (21 Cong. Rec. 2562, 2457; see also at 2459, 2461.) That its purpose was to suppress combinations to restrain competition and attempts to monopolize by *individuals and corporations,* abundantly appears from its legislative history.'' (P. 351 [87 L.Ed. p. 326].) [Italics supplied.]

The city, in adopting and enforcing the ambulance order, made no contract or agreement and entered into no conspiracy in restraint of trade or to establish monopoly, but imposed the restraint as an act of government which the Cartwright Act did not undertake to prohibit. (See *Olsen* v. *Smith,* 195 U.S. 332, 344-345 [49 L.Ed. 224, 230, 25 S.Ct. 52, 55]; *People* v. *Sacramento Butchers' etc. Assn.,* 12 Cal.App. 471, 476 [107 P. 712].)

Since the Cartwright Act is not applicable to restraints imposed by government, no inconsistency arises from the application of the common law to the case under review. (See *Willis* v. *Santa Ana etc. Hospital Assn.,* 58 Cal.2d 806, 810 [26 Cal.Rptr. 640, 376 P.2d 568].) Indeed, the Act discloses an intent that the common law is not to be superseded by providing that the Act is ''cumulative'' of

236

"any other provision of law relating to the same subject in effect May 22, 1907." (Bus. & Prof. Code, § 16700.)

█ The common law provides a remedy where the right to pursue a lawful business, calling, trade, or occupation is intentionally interfered with, either by unlawful means or by means otherwise lawful, when there is a lack of sufficient justification. (*Guillory* v. *Godfrey*, 134 Cal.App.2d 628, 632 [286 P.2d 474]; *Masoni* v. *Board of Trade*, 119 Cal.App.2d 738, 741 [260 P.2d 205].) "Whether there is justification is determined . . . by balancing, in the light of all the circumstances, the respective importance to society and the parties of protecting the activities interfered with on the one hand and permitting the interference on the other." (*Willis* v. *Santa Ana etc. Hospital Assn.*, *supra*, 58 Cal.2d 806, 810; *Osteopathic Physicians & Surgeons* v. *California Medical Assn.*, 224 Cal.App.2d 378, 396 [36 Cal.Rptr. 641]; see Rest. Torts, § 767.)

█ No cause of action is stated under the foregoing principles where it is alleged that plaintiff's ambulance business had been discriminated against by reason of a policy decision of city officials. The City Council, as the governing body of the Barstow Community Hospital, is authorized to adopt a directive preferring one ambulance service to another. (See Gov. Code, § 37655.) This rationale derives validity when one considers that official action was taken only after plaintiff threatened to leave the public ambulance business. The city's response in issuing the directive and inducing Crippen to station ambulance units in Barstow was not unreasonable or arbitrary in view of plaintiff's ultimatum, but was justified by the service which the public would thereby enjoy. The result of this official action was to increase competition in the public ambulance business serving the Barstow geographical region.

In *Blank* v. *Palo Alto-Stanford Hospital Center*, 234 Cal. App.2d 377 [44 Cal.Rptr. 572], it was held that the exclusion of a radiologist from use of a hospital's diagnostic radiology department was not, as a matter of law, unreasonable or arbitrary, but justified by services benefiting the public patients, and other doctors; the reviewing court noted than an agreement conferring an *exclusive privilege* is not illegal *per se.* "Among the facts to be considered in determining 'justification' (Rest. Torts, § 765) is 'the appropriateness of the actors' conduct as a means of advancing their interests and the availability of less harmful means to that end' (*idem.* cl. (c)); among the criteria of 'privilege' (Rest. Torts, §§ 766,

767) are 'the nature of the actors' conduct' and 'the nature of the expectancy with which his conduct interferes' (*idem.* § 767, cls. (a) and (b)); and the unreasonableness of a contract which restrains trade (Rest. Contracts, §§ 513-516) depends on not only a resulting monopoly, but whether or not the contract tends or has for its purpose the creation of such monopoly, and whether or not such monopoly, if so created, is attended by any dominant social or economic justification. . . ." (p. 385.)

In the case under review, plaintiff's competitor was not given an exclusive franchise to serve Barstow Community Hospital but only a preference. Therefore, Crippen and the city could terminate this mutual relationship at will. Moreover, there is nothing to indicate that Crippen had a monopoly on the ambulance business or the ability to create one. Defendants' action did not violate any contract or license possessed by the plaintiff and, therefore, did not interfere with any vested interest or expectancy held by him. Finally, the interest and welfare of the citizens and residents of Barstow in adequate and reliable ambulance service must be considered in viewing the defendants' action. The officials' determination that the city hospital would best be served by Crippen is entitled to great weight.

Since these facts appear from the complaint, or are fairly inferable therefrom, it is apparent the action of the defendants was eminently justified and, therefore, the complaint likewise failed to state a cause of action under common law principles of antitrust. ▪▪▪ Assuming, however, that the complaint states a cause of action for conspiracy in restraint of trade, the judgment must nevertheless be affirmed. This conclusion is inescapable inasmuch as the city and its employees are entitled to immunity under the California tort claims statute.

Since 1963 claims and actions against public entities and public employees have been governed by the California Tort Claims Act (Gov. Code, § 810 et seq.). Under the act, "[A] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person" except as provided by statute. (Gov. Code, § 815.) Consequently, immunity becomes the rule unless liability is imposed by the exceptions contained in the statute. (*Sava* v. *Fuller,* 249 Cal.App.2d 281, 284 [57 Cal.Rptr. 312].) The vicarious liability of public entities generally is governed by section 815.2 of the Government

Code, which provides (a) that the public entity is liable for an injury proximately caused by an employee acting within the scope of his employment if the employee's act or omission would have given rise to a cause of action against the employee and, conversely (b) "except as otherwise provided by statute" a public entity is not liable when the employee is immune from liability.

The provisions of the statute governing immunity in this case are contained in section 820.2 of the Government Code, which states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the *discretion* vested in him, whether or not such discretion is abused." [Italics supplied.] While this section relates specifically to public employ*ees*, section 815.2, subd. (b), grants immunity to the public entity whenever its employee enjoys immunity. Therefore, if the employee is immune under section 820.2, the public entity is similarly immune. (*Sava* v. *Fuller, supra*, 249 Cal.App.2d 281, 284.)

 The judicial test in California as to whether a governmental employee is liable for an injury resulting from his acts or omissions, or is granted immunity therefrom under the discretionary exclusion rule, depends on whether the act or omission was "discretionary" or "ministerial" (*Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211, 220 [11 Cal.Rptr. 89, 359 P.2d 457]), even when it is alleged that the public employee acted maliciously. (*White* v. *Towers*, 37 Cal.2d 727, 730-732 [235 P.2d 209, 28 A.L.R.2d 636]; *Hardy* v. *Vial*, 48 Cal.2d 577, 582-584 [311 P.2d 494].) However, in interpreting the discretionary exclusion clause contained in the Federal Tort Claims Act, which has been in effect since 1948 (28 U.S.C. § 2680 (a)), the U.S. Supreme Court has adopted the "planning level versus operational level" test for determining whether the function is, or is not, discretionary. (*Dalehite* v. *United States*, 346 U.S. 15 [97 L.Ed. 1427, 73 S.Ct. 956].)[1]

While the government is not liable for damages resulting from its discretionary decisions at the policymaking or plan-

---

[1]The Federal Tort Claims Act (28 U.S.C. §§ 1346, 2671, 2678, 2680) effects a general waiver of sovereign immunity as to all tort claims except those falling within certain excepted categories. One of the excepted categories relates to claims based upon the exercise or performance . . . (of) a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused. (28 U.S.C. § 2680(a).) This exception is commonly called the "discretionary function exception."

ning level, the discretionary function exception affords it no protection from the effects of negligence at the subordinate or operational level. (*Dalehite* v. *United States, supra*; see 99 A.L.R.2d 1016, 1024.) The legislative comment on section 820.2 states that the section was intended to restate preexisting California law. (Van Alstyne, *Governmental Tort Liability*: *A Public Policy Prospectus*, 10 U.C.L.A. L.Rev. 463, 519.) Such statement has been construed to mean that the interpretation of the legislative meaning of the words "exercise of discretion" is intended to be the same as under preexisting law. (*Sava* v. *Fuller, supra*, 249 Cal.App.2d 281, 284.)

Neither the federal nor the California tests are simple in their application as to whether the discretionary exclusion rule governs. (*Sava* v. *Fuller, supra*, p. 291.) Every act performed by a human being involves the exercise of *some* discretion. (*NeCasek* v. *City of Los Angeles*, 233 Cal.App.2d 131, 135 [43 Cal.Rptr. 294].) However, the alleged harm suffered by the plaintiff in this case must be deemed to have resulted from the exercise of a discretionary act. A discretionary act, as distinguished from a ministerial act, has been described in the following language: "[W]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves the exercise of discretion and judgment it is not to be deemed merely ministerial." (*Elder* v. *Anderson*, 205 Cal.App.2d 326, 331 [23 Cal.Rptr. 48].)

Pursuant to stipulation at oral argument, it was agreed that the City of Barstow is a general law city (Gov. Code, § 34102), and that the Barstow Community Hospital was organized pursuant to statute. (Gov. Code, §§ 37650-37660.)

General law cities have "only those powers conferred upon them by the Legislature, together with such powers as are necessarily incident to those expressly granted or essential to the declared object and purposes of the municipal corporation." (*Irwin* v. *City of Manhattan Beach*, 65 Cal.2d 13, 20 [51 Cal.Rptr. 881, 415 P.2d 769].)

Here, the Legislature has conferred upon the City of Barstow control over the Barstow Community Hospital. Section 37655 of the Government Code provides :"The legislative body may prescribe rules for the administration of the hospital and the terms upon which patients may be admitted to it." In addition to prescribing rules for the administration of

the hospital, the city " 'may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws.' " (Cal. Const., art. XI, § 11; *Jardine* v. *City of Pasadena,* 199 Cal. 64, 71 [248 P. 225, 48 A.L.R. 509]; *Chavez* v. *Sargent,* 52 Cal.2d 162, 176 [339 P.2d 801].)

The cited authorities make it clear that the city officials were empowered, in the exercise of their discretion, to issue the directive in dispute so as to provide the city's hospital with reliable and dependable ambulance service. The issuance of the directive constituted a discretionary act authorized by section 37655 of the Government Code, and article XI, section 11 of the Constitution. It is essential to the services offered the public by a hospital that the administrators thereof make certain that its services function properly and are coordinated, that patients are received and cared for regardless of their condition or of the hour that care may be necessary, and that the community may be served in times of epidemic or disaster. (*Cedars of Lebanon Hospital* v. *County of Los Angeles,* 35 Cal.2d 729, 736 [221 P.2d 31, 15 A.L.R.2d 1045].) Consequently, the city officials were acting within the scope of their employment when they directed the city's hospital to prefer Crippen over the plaintiff. (See *Hardy* v. *Vial, supra,* 48 Cal.2d 577; *Tietz* v. *Los Angeles Unified School Dist., supra,* 238 Cal.App.2d 905, (reh. den. 385 U.S. 964 [17 L.Ed.2d 309, 87 S.Ct. 389].))

In *Tietz* v. *Los Angeles Unified School Dist., supra,* a teacher charged in a complaint for conspiracy that the principal and vice principal of her school threatened her with removal from her position; that the threats were part of a plan to coerce teachers with greater seniority than that enjoyed by the principals to transfer; that the principals falsely claimed to have reports of the teacher's dereliction of duty; the court held that the complaint failed to state a cause of action against the principals because of statutory immunity.

In *Hardy* v. *Vial, supra,* 48 Cal.2d 577, the plaintiff was discharged from his employment as a professor at a state college as a result of charges made by certain college officials and three persons who had no connection with the college; upon securing reinstatement to his position by the State Personnel Board, plaintiff filed suit for malicious prosecution against the persons who allegedly conspired to secure his ouster; the trial court sustained the general demurrer of the

college defendants without leave to amend; the Supreme Court held that the seven school defendants occupied positions which would ordinarily embrace duties relating to the investigation of charges instituted against professors; plaintiff's argument that the school defendants were not entitled to the protection of the immunity rule because they acted beyond the scope of their employment when they conspired with nonschool defendants and aided and abetted the nonschool defendants in making and filing affidavits containing false charges was determined to be unmeritorious because the alleged purpose of the conspiracy in making the affidavits was obviously to accomplish the dismissal of the plaintiff from his employment; this purpose was within the scope of the official duties of the school defendants, and thus entitled them to immunity.

Plaintiff relies on *Sava* v. *Fuller, supra,* 249 Cal.App.2d 281, to sustain his contention that the trial judge decided "too much, too soon." In *Sava,* a state botanist and his state employer were charged as parties-defendant; the wrongful death complaint charged that the decedent-child was actually suffering from bronchopneumonia, but that the botanist, acting within the course and scope of his employment, was requested by the child's attending physician to make an analysis of a plant substance the child may have ingested; that the botanist negligently identified the plant as "toxic," which it was not; that decedent's death was the proximate result of an incorrect analysis because the treatment thereafter furnished by the child's physician was based on misinformation that ingestion of toxic materials rather than bronchopneumonia was the child's ailment; the court, in reversing the judgment of dismissal, held that under the rule of *Costley* v. *United States,* 181 F.2d 723, exercise of discretion had ended when the botanist had agreed to analyze the possibly ingested plant substance, and that thereafter the government was bound to the same standard of care as the law requires of private citizens.

*Sava* is not apposite in the instant case for the reason that the issuance of the ambulance directive represented an exercise of discretion authorized by section 37655 of the Government Code, and article XI, section 11 of the California Constitution.

Finally, the purported fourth cause of action for declaratory relief was not only deficient for the foregoing reasons, but also was defective on supplementary grounds. It charged that

the plaintiff was entitled to recover damages from defendants under the California Tort Claims Act or, in the alternative, that said act was unconstitutional in the event it granted immunity to the city and its officials. Since there is ample judicial authority upholding the constitutionality of the act (*Heieck & Moran* v. *City of Modesto,* 64 Cal.2d 229 [49 Cal. Rptr. 377, 411 P.2d 105]; *City of Burbank* v. *Superior Court,* 231 Cal.App.2d 675 [42 Cal.Rptr. 23]), and since plaintiff was not entitled to recover because of the act's immunity provisions, the trial court properly determined that the complaint failed to state a cause of action.

Judgment affirmed.

McCabe, P. J., and Tamura, J., concurred.