[No. B028127. Second Dist., Div. Two. Dec. 28, 1988.]

THOMAS EDWARDS, Plaintiff and Respondent, v.
CALIFORNIA SPORTS, INC., Defendant and Appellant.

COUNSEL

Haight, Brown & Bonesteel, Roy G. Weatherup, Delos E. Brown and Thomas N. Charchut for Defendant and Appellant.

John M. Pitkin and Steven A. Silverstein for Plaintiff and Respondent.

OPINION

COMPTON, Acting P. J.—In a personal injury action predicated on premises liability, defendant appeals from a judgment entered on a jury's verdict which apportioned 27 percent of the fault to defendant and 73 percent to plaintiff. In monetary terms the damages were assessed at $2 million with defendant obligated to pay $540,000. We reverse and remand the matter to the trial court with directions to enter judgment in favor of defendant.

Defendant, California Sports Inc., operates the sports arena known as The Forum located in Inglewood, California. It is a multi-storied structure where varied forms of entertainment and athletic contests are presented including the home games of the professional basketball team known as the Los Angeles Lakers.

At the southern portion of the arena an exterior driveway from the parking lot leads down to a subterranean tunnel which is used by the facility as an entrance for heavy equipment. As the ramp descends into the tunnel, it is flanked on its west and east sides by retaining walls. Atop the walls are metal railings to prevent pedestrians in the parking lot from falling onto the driveway below. The railings consist of vertical and horizontal bars anchored to the walls by a concrete base. On the west side the concrete base rises from the top of the retaining wall to a height of approximately 13½ inches. The railings attach to the concrete base, then extend upward to a height of an additional 36 inches. It is and has been the custom of some particularly enthusiastic fans to gather at the railings after a game in order to view players as they leave the building. During its over 12 years of existence, nothing untoward has ever occurred at this particular location.

On the date in question, according to disinterested percipient witnesses, plaintiff, while in an intoxicated condition, climbed up on the west guard fence, using the horizontal bars like the rungs of a ladder and fell onto the pavement below suffering severe head injuries.

There was absolutely no evidence that plaintiff was pushed, shoved, jostled or thrown over the fence. Claiming to have no memory of the events, plaintiff offered no testimony of his own.

Although the fence was constructed in conformity with applicable building code requirements and the standards of the American National Safety Institute, plaintiff produced a safety engineer who offered an opinion that a higher fence constructed without horizontal members would have prevented the fall.

Over objections by defendant, this witness was permitted to speculate as to five ways the accident may have occurred. Only one of these found any support from the facts in the case, i.e., that plaintiff climbed on the fence and fell.

■ Also, over objection by defendant, plaintiff was permitted to produce a so-called expert on "crowd psychology and control" and although there was not a scintilla of evidence that those factors had anything to do with the case or that the witness had any expertise in construction or building design, the witness purported to offer an opinion that alteration of the fence or redeployment of security personnel could have prevented the fall.

■ ■ While we believe under the circumstances that it was error to permit the testimony of these so-called experts, the more fundamental defect in the judgment is the lack of any evidence to establish that defendant breached any duty of care in construction of the fence.

■ While the adoption of the doctrine of comparative negligence in *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] ameliorated the harshness of the former rule under which any quantum of contributory negligence served to bar recovery to a party injured as a result of defendant's negligence, it did not relieve the injured party from the burden of proving that a defendant was guilty of some degree of negligence which caused the injury. Until this latter fact is established there is no room for apportioning fault. No suggestion of negligence arises from the mere happening of an accident. (*American Employer's Ins. Co. v. Smith* (1980) 105 Cal.App.3d 94, 101 [163 Cal.Rptr. 649]; *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 938 [122 Cal.Rptr. 470].)

In the case at bench, one can conjure up all manner of extreme measures which might have prevented this particular injury but that is not the issue. ■ The fundamental inquiry is whether the duty of a landowner to exercise reasonable care in preventing injury to persons on the premises (Civ. Code, § 1714) required such measures.

"The foreseeability of a particular kind of harm plays a very significant role in this calculus [to which a court looks in defining the boundaries of

'duty'] (see *Dillon* v. *Legg, supra,* 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912]), but a court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of *negligent conduct* [italics added] at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624], italics in original.)

Essential to plaintiff's position is that the fence in its present configuration constituted a dangerous condition in that it was not adequate to prevent reasonably foreseeable injury to a person standing or walking near the fence. In short, it was necessary for plaintiff to prove that the fence was negligently constructed or designed before the issue of apportionment of fault ever came into question.

Since the fence was 50 inches high, it would be approximately chest high to an individual 6 feet tall. It takes only a rudimentary grasp of the law of physics to see that the fence would accomplish what it was designed to do, i.e., prevent anyone of average height who was standing at the edge of the area or walking near the edge of the area from falling over the edge as a result of slipping, tripping, losing balance or even being bumped or pushed. Thus, it was clearly adequate for its designed purpose.

There is a limit as to how far society should go by way of direct governmental regulation of commercial and private activity, or indirect regulation thereof through the tort system, in order to protect individuals from their own stupidity, carelessness, daring or self-destructive impulses.

Here, the jury determined that plaintiff's conduct was the major and primary cause of his own injury. This simply validated the obvious. The evidence would permit of no other finding. The question then is a narrow one, i.e., did defendant's duty of due care require it to design and construct its building in a manner that would thwart plaintiff's derring-do? We think not. The matter should not have been permitted to go to the jury.

 " ' "The applicable general principle is that the owner of the property, insofar as an invitee is concerned, is not an insurer of safety but must use reasonable care to keep his premises in a reasonably safe condition and give warning of latent or concealed peril. He is not liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care." ' [Citations.]" (*Beauchamp* v. *Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 27-28 [77 Cal.Rptr. 914].)

Further, plaintiff cannot use his own voluntarily induced state of intoxication to claim that he was unaware of the obvious peril of climbing a fence designed to prevent a fall from a height of 15 feet to a concrete surface.

Since the jury's apportioning of 27 percent of the fault to defendant was based on the breach of a duty which, as a matter of law, did not exist, the judgment must be and is reversed. The matter is remanded to the trial court with directions to enter judgment for defendant.

Plaintiff to bear the costs on appeal.

Gates, J., and Fukuto, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 15, 1989.