[No. A048506. First Dist., Div. Three. Mar. 26, 1991.]

IAN DOMINGUEZ et al., Plaintiffs and Appellants, v.
SOLANO IRRIGATION DISTRICT et al., Defendants and
Respondents.

COUNSEL

Quattrin, Johnson, Campora & England, David B. Johnson, Goodman, Herbert & Lucas, F. Richard Lucas and Francis P. Minogue for Plaintiffs and Appellants.

O'Reilly & Collins and James P. Collins for Defendants and Respondents.

OPINION

**MERRILL, Acting P. J.**—Ian Dominguez and Frank Patrick Dominguez appeal from a judgment entered upon the granting of motions for summary judgment filed by respondents the City of Fairfield and the Redevelopment Agency of the City of Fairfield (hereafter collectively referred to as Fairfield), and Solano Irrigation District (SID). This wrongful death action arises from the tragic death of appellants' decedent, Shizuko Dominguez, which occurred as she was attempting to rescue her son appellant Ian Dominguez and his friend Michael Pleasant after they had accidentally fallen into the Putah South Canal adjacent to the subdivision in which they lived. Because the trial court did not err in granting summary judgment as to the respondents herein, we affirm.

I

The facts in this case are essentially undisputed. On April 16, 1985, appellants' decedent, Shizuko Dominguez, drowned in the Putah South Canal (the Canal) in Solano County, near Fairfield. At that time, the Canal and its appurtenant works were under the exclusive management and control of the Solano County Flood Control and Water Conservation District (the District), which in turn had contractually delegated the duties of maintaining the Canal to SID, its authorized agent. SID is a public entity.

The Canal was located near the boundary of a housing development in Fairfield known as the Bradbury Subdivision (the Subdivision). It ran parallel to the northern boundaries of the residences located on Greenfield Drive in the Subdivision. In 1974, prior to the development of the Subdivision, the District erected a six-foot chain link fence bordering the south edge of the Canal, directly adjacent to the property that later became the Subdivision. Atop this chain link fence were three strands of barbed wire.

During the construction of the Subdivision, a portion of this chain link fence was removed and replaced with an eight-foot "sound" fence or wall. The sound wall was 300 feet long, ran parallel to the south border of the

Canal, and served as a barrier between the residences located within the Subdivision along Greenfield Drive and the Canal. The lots in the Subdivision were separated by wooden fences or walls, which in turn abutted the sound wall and were perpendicular thereto. The portion of the chain link fence surmounted with barbed wire which had been removed was never replaced. As a condition of approval of the developer's Subdivision map and plans, SID required the developer to construct the sound wall as a barrier to entry into the Canal right-of-way by the general public.

At all relevant times hereto, appellants and appellants' decedent resided on Greenfield Drive. Before the purchase of the Greenfield residence in 1982, appellant Frank Dominguez saw the fencing around the canal. Although he was satisfied as to the overall safety of the area, he did consider the Canal to be dangerous, and had warned his son appellant Ian Dominguez not to go over the sound wall barrier into the Canal area.

On April 16, 1985, appellant Ian Dominguez and his friend Michael Pleasant were playing in the backyard of a vacant house located on Greenfield Drive, across the street from the Dominguez residence and directly abutting on the Canal right-of-way. At the time, the two boys were under twelve years old. The two boys climbed the wooden fence separating the backyard of the vacant house from that of the adjoining house next door, using the property line fence to scale the abutting eight-foot sound wall separating the property from the Canal right-of-way. This was not the first time appellant Ian Dominguez had scaled the sound wall. On each of the approximately four previous occasions, he would return by climbing back over the chain link fence at some distance away from the vacant house on Greenfield, because the chain link fence was easier to scale than the stone-masonry sound wall.

While they were playing near the Canal's edge, Michael Pleasant fell into the Canal. He grabbed appellant Ian Dominguez's leg, thereby pulling Ian into the Canal as well. A neighborhood girl who observed the boys fall into the Canal went to get help. Ian's mother, Shizuko Dominguez, entered the Canal right-of-way from the backyard of the vacant house by scaling the sound wall. She then jumped into the waterway to save her son. Somehow, the boys were saved, but Shizuko Dominguez drowned.

Appellants filed suit for wrongful death against respondents as well as Kaufman and Broad of Northern California, Inc. (Kaufman), the developer and builder of the Subdivision, alleging that the respondents had permitted easy access to the Canal, which was inherently dangerous and constituted an attractive nuisance. Respondents Fairfield and SID, as well as Kaufman,

filed motions for summary judgment. The motion brought by Kaufman was denied, but those filed by respondents were granted. This appeal followed.

## II

■ On appeal from the grant of a motion for summary judgment, the basic issue is whether there are any triable issues of material fact. Code of Civil Procedure section 437c, subdivision (c), *requires* the trial judge to grant summary judgment if all the evidence submitted, and "all inferences reasonably deducible from the evidence" and uncontradicted by other inferences or evidence, show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It is not disputed that respondents are public entities. Their liability in this tortious wrongful death action is therefore governed by statute, in the form of the California Tort Claims Act (Gov. Code, § 810 et seq.) (the Act). (*Swaner* v. *City of Santa Monica* (1984) 150 Cal.App.3d 789, 797-798 [198 Cal.Rptr. 208]; *Widdows* v. *Koch* (1968) 263 Cal.App.2d 228, 237 [69 Cal.Rptr. 464].) Government Code section 815 states: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [¶] (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person." ■ As a consequence, "immunity becomes the rule unless liability is imposed by the exceptions contained in the statute." (*Widdows* v. *Koch, supra,* 263 Cal.App.2d at p. 237.)

The conditions of public entity tort liability for dangerous conditions on public property are set forth in Government Code section 835, which provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." The Act defines the term "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or

adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (Gov. Code, § 830, subd. (a).)

■ Appellants' theory of the case is based upon their contention that a dangerous condition was created by the design and location of the sound wall separating a portion of the Subdivision from the Canal right-of-way, and the absence of an additional chain link fence topped with barbed wire between the sound wall and the Canal itself. Specifically, appellants contend that the perpendicular abutment of the eight-foot sound wall with the fences separating the individual properties in the Subdivision created a relatively easy way for anyone to scale the sound wall and enter the Canal right-of-way; and that this, in combination with the absence of an additional chain link fence with barbed wire like that located elsewhere along the right-of-way, created a dangerous condition amounting to an attractive nuisance for which respondents are responsible.

■ As a general rule, the issue of whether a given set of facts and circumstances amounts to a dangerous condition is a question of fact. Nevertheless, under the Act either the trial or the appellate court may conclude, as a matter of law, that a condition is not dangerous upon the determination that no reasonable person would consider that it posed a substantial risk of injury "when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (Gov. Code, § 830.2; *Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 497 [147 Cal.Rptr. 898].)[1] In our opinion, the trial court could reasonably make that determination in this case.

■ Separating the properties in the Subdivision from the Canal right-of-way was an eight-foot sound wall of stone masonry construction. It replaced an earlier chain link fence surmounted by barbed wire, which was only six feet in height, and which appellants do not dispute was *easier* to climb than the higher masonry sound wall which replaced it. Unlike the broken-down fence described in *McDaniel* v. *Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 10 [269 Cal.Rptr. 196], a case on which appellants place heavy reliance, there is no contention in this case that the sound wall was in any state of disrepair.

Numerous California cases have held that public entities have no duty, as a matter of law, to prevent members of the public—including young

---

[1] Government Code section 830.2 provides: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."

children—from scaling walls and fences erected for the purpose of keeping them out of areas of relative danger. Thus, in *Betts* v. *City & County of San Francisco* (1952) 108 Cal.App.2d 701 [239 P.2d 456], the Court of Appeal reversed a trial court judgment for the plaintiffs in a wrongful death action, in which the decedent, a seven-year-old boy, had climbed over a picket fence surrounding a reservoir and drowned after slipping down the embankment of a concrete spillway into the water. (*Id.*, at pp. 702, 704.)

The court's discussion in *Betts* is directly applicable to the instant case. It stated: " 'A body of water—either standing as in ponds and lakes, or running as in rivers and creeks, or ebbing and flowing, as on the shores of seas and bays—is a natural object incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it is an apparent open danger, the knowledge of which is common to all; and there is no just view consistent with recognized rights of property owners, which would compel one owning land upon which such water, or part of it, stands or flows, to fill it up, or surround it with an impenetrable wall.'

". . . . . . . . . . . . . . . . . . . .

". . . In surrounding the reservoir by a substantial fence the city gave to all persons young and old sufficient notice that this reservoir was not a place of public recreation and that it was certainly not a place which the public could use for drinking water. The so-called hidden danger in the concrete intake was to the contrary a natural contrivance for carrying the water into the lake, and, when used as a footpath, was an open and obvious source of danger." (*Betts, supra,* 108 Cal.App.2d at pp. 702-703.)

Similarly, in *Edwards* v. *California Sports, Inc.* (1988) 206 Cal.App.3d 1284 [254 Cal.Rptr. 170], the Court of Appeal held that a sports arena had no duty to a fan who suffered personal injury when he fell as he was attempting to scale a fence separating the parking lot from an underground tunnel, while intoxicated. The plaintiff offered evidence, over the objections of the defendant, to the effect that a differently designed fence would have prevented the fall. The fence itself was only 50 inches high. The court held that although "one can conjure up all manner of extreme measures which might have prevented this particular injury," the fundamental question in the case "is whether the duty of a landowner to exercise reasonable care in preventing injury to persons on the premises . . . required such measures." (*Edwards, supra,* 206 Cal.App.3d at p. 1287.)

The court concluded that it did not. "It takes only a rudimentary grasp of the law of physics to see that the fence would accomplish what it was designed to do, i.e., prevent anyone of average height who was standing at

the edge of the area or walking near the edge of the area from falling over the edge as a result of slipping, tripping, losing balance or even being bumped or pushed. Thus, it was clearly adequate for its designed purpose . . . . [¶] Here, the jury determined that plaintiff's conduct was the major and primary cause of his own injury. This simply validated the obvious. The evidence would permit of no other finding. The question then is a narrow one, i.e., did defendant's duty of due care require it to design and construct its building in a manner that would thwart plaintiff's derring-do? We think not. The matter should not have been permitted to go to the jury." (*Edwards, supra,* 206 Cal.App.3d at p. 1288; see also *Corcoran* v. *City of San Mateo* (1953) 122 Cal.App.2d 355, 356-360 [265 P.2d 102, 39 A.L.R.2d 1448].)

The instant case is essentially indistinguishable from these cited appellate cases. Respondents had fulfilled their duty to the public by ensuring that an eight-foot-high wall was constructed separating the Subdivision from the Canal right-of-way. This barrier was substantial; indeed, it was far higher and more difficult to scale than the fences at issue in *Betts* and *Edwards.* Under the circumstances, it was not reasonably foreseeable that children playing in the area would scale such a wall. Although hypothetical additional safety measures could conceivably have been adopted to make it more difficult for children intent on getting into the right-of-way to do so, it is not the duty of a public entity to ensure against all possible danger. " ' . . . [A]ny property can be dangerous if used in a sufficiently abnormal manner . . . .' " (*Fuller* v. *State of California* (1975) 51 Cal.App.3d 926, 940 [125 Cal.Rptr. 586], italics omitted.)

The trial court could properly conclude, as a matter of law, that the conditions present here were not "dangerous," for purposes of the Act, because no reasonable person would consider them such when the property in question was used "with due care in a manner in which it was reasonably foreseeable that it would be used." (Gov. Code, § 830.2; *Swaner* v. *City of Santa Monica, supra,* 150 Cal.App.3d at p. 799.)

The judgment is affirmed.

Strankman, J., and Chin, J., concurred.