OPINION OF THE COURT
Thomas V. LaFauci, J.
Pursuant to CPLR 3212 subd [e] plaintiff tenant moves for summary judgment on her second cause of action. This cause of action is based upon the defendant landlord’s alleged breach of section 235-b of the Real Property Law, the warranty of habitability. The application of this section of the Real Property Law to an action in tort, or what amounts to a claim against the landlord in strict liability, is a relatively recent development in New York landlord and tenant law and as such requires close examination.
FACTS
Before going on to the legal merits of plaintiff’s motion and underlying cause of action, a brief recitation of the facts is in order. Plaintiff is a tenant residing in Apartment No. 4K at 90-59 56th Avenue, Elmhurst, New York, pur *454 suant to a lease first signed on September 1, 1968 and renewable every three years.
Plaintiff alleges that on May 10, 1978, a five-foot wide kitchen cabinet fell off the wall in her apartment, and fell on top of the plaintiff rendering her unconscious. Plaintiff further claims that she was in no way responsible for the accident since she alleges she committed no act which would cause or contribute to the cabinet’s falling. Defendant, by its answer, alleges that “if the injuries * * * occurred as alleged * * * they were caused by plaintiff’s culpable conduct.” The court notes, however, that beyond this flat statement in defendant’s answer, there is nothing to support such an allegation of culpable conduct on plaintiff’s part.
Given this scenario, plaintiff claims that defendant is strictly liable for all damages caused by landlord’s alleged breach of the warranty of habitability.
LEGISLATIVE HISTORY
The warranty of habitability was enacted in 1975 and represented a codification of the rule announced in Tonetti v Penati (48 AD2d 25). In that case the court held that the premises were uninhabitable because of conditions which the landlord did not rectify. The tenant’s liability for rent thus terminated when tenant vacated. The court stated (p 30) “we * * * hold that, unless expressly excepted, there is an implied warranty of habitability when a landlord leases pemises for residential use.” (See, also, Morbeth Realty Corp. v Velez, 73 Misc 2d 996; Steinberg v Carreras, 74 Misc 2d 32.) The Legislature expanded upon the Tonetti rule by establishing, via section 235-b of the Real Property Law, a warranty of habitability in every lease or rental agreement which cannot be waived by either side. Specifically, chapter 597 of the Laws of 1975, effective and approved by the Governor on August 1, 1975, provides as follows :
“1. In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in *455 common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety. When any such condition has been caused by the misconduct of the tenant or lessee or persons under his direction or control, it shall not constitute a breach of such covenants and warranties.
“2. Any agreement by a lessee or tenant of a dwelling waiving or modifying his rights as set forth in this section shall be void as contrary to public policy.”
The warranty of habitability represents a major advancement in landlord/tenant law. It is, in effect, the final step in a process which has moved landlord/tenant law away from the outmoded concepts of an agrarian society and towards the realities of modern urbanization. As Govenor Carey stated in his remarks upon approving the bill: “By one large step this bill moves the law of landlord and tenant into the twentieth Century.” (NY Legis Ann, 1975, p 438.)
LEGISLATIVE INTENT
While this court acknowledges that section 235-b of the Real Property Law represents a tremendous legal asset to tenants, we must be careful not to extend the impact of the law beyond that which was contemplated by the Legislature. A review of the legislative comments leading up to the passage of this law indicates that the imposition of strict liability upon the landlord based upon section 235-b of the Real Property Law is an unwarranted extension of the law. In enacting section 235-b of the Real Property Law the Legislature was concerned with placing the tenant in “legal parity” with the landlord (1975 Sen J 7766-7776 —remarks of Sen. Barclay), not with expanding the tenant’s rights out of proportion to those of the landlord. Toward this end, the Legislature recognized that a lease is a contract and as such the rights of the parties involved should be dealt with in a contractual framework. The principal Senate sponsor of the warranty bill, Senator H. Doug *456 las Barclay stated in his supporting remarks on the floor of the Senate, “In return for rent received the landlord will warrant that the premises are habitable. It is a very simple concept, the contractual relationship between the two parties will be changed to put the tenant in parity legally with the landlord.” (1975 Sen J 7776 — remarks of Sen. Barclay.) Senator Barclay went on to say, “We are treating a lease or rental agreement for residential premises as a contract. The full range of remedies in contract law could be considered by the court. These include damages, specific performance and recission. The most frequently applied measure of damages is likely to be the decrease in rental value caused by the breach. Such abatement of rents have been applied by those courts in the state which now recognize the implied warranty.” (1975 Sen J 7771 — remarks of Sen. Barclay.)
To now engraft by judicial fiat the tort concept of strict liability upon what the Legislature viewed as a contractual matter would be to distort the intention of the Legislature and, in effect, replace it with the opinion of the judiciary. If, indeed, the Legislature intended strict liability to result from section 235-b of the Real Property Law, and this court does not believe it did, then it is up to the Legislature to speak to that position. The courts are empowered to interpret the law but not to rewrite it. In speaking about the section of the law relating to tenant’s misconduct (which would vitiate the warranty) Senator Barclay stated “The use of the word ‘misconduct’ is a word that the courts must interpret. We’ve avoided the word ‘negligence’ because this is a contractual matter rather than a question of tort law.” (1975 Sen J 7774 — remarks of Sen. Barclay; emphasis added.)
Another point which bears reflection, and as was noted in the well-reasoned decision of Zarlin Realty v Napolitano, (NYLJ, April 27,1977, p 11, col 3), the imposition of strict liability (under section 235-b) would be in direct conflict with section 78 of the Multiple Dwelling Law. That section provides “Every multiple dwelling, including its roof or roofs, and every part thereof and the lot upon which it is situated, shall be kept in good repair. The owner shall be *457 responsible for compliance with the provisions of this section”.
An essential element of liability under this section is notice of the defect causing the injury. (Becker v Manufacturers Trust Co., 262 App Div 525; Pagan v Goldberger, 51 AD2d 508.) As Judge Milano states in Zarline (supra, p 11, col 6) “Section 235b was a section added to the RPL. But section 78 of the MDL was never repealed, modified or changed by the legislature when 235b was enacted. Section 78 remains intact and so do the precedents upholding the requirement of notice.”
POLICY CONSIDERATIONS
Strict liability is a uniquely tort concept formulated to deal with the problems of proof encountered by an injured party who is many times removed from the manufacture of the defective product. To apply such principles to the landlord would be manifestly unfair. A landlord is not analogous to a modern day manufacturer. “ [A] landlord is not engaged in mass production whereby he places his product — the apartment — in a stream of commerce exposing it to a large number of consumers. He has not created the product with a defect which is preventable by greater care at the time of manufacture or assembly. He does not have the expertise to know and correct the condition, so as to be saddled with responsibility for a defect regardless of negligence.” (Dwyer v Skyline Apts., 123 NJ Super 48, 55, affd 63 NJ 577.) In Dwyer it was the considered opinion of the highest court of the State of New Jersey that the doctrine of strict liability does not apply to the ordinary landlord of a multiple-family dwelling.
It should also be noted that it is the tenant and not the landlord who is in a better position to inspect for any possible defects.
In the recent case of Kaplan v Coulston (85 Misc 2d 745) the court was presented with an almost identical set of facts as in the case at bar. In that case the court granted the plaintiff tenant’s motion to amend the complaint to state a cause of action in strict liability. The Kaplan court stated (supra, pp 751-752) “it seems to this court that the *458 imposition of strict liability on the part of a landlord for injuries caused by a defect in the premises would best serve the interests of justice.” This court disagrees. Indeed, not only would the imposition of strict liability upon the landlord be against the best interests of the parties involved, but it also would create greater problems. “[I]t may not be in the best interest of landlord and tenant to impose such an onerous burden on the landlord by making him absolutely and strictly liable for any condition causing personal injury without notice. The encouragement of prospective purchasers in the housing market and the retention of owners presently maintaining their buildings in the City of New York is vital to the preservation of our housing stock. The imposition of such liability could very well be the proverbial straw on the camel’s back.’ ” (Zarlin Realty Co. v Napolitano, supra, p 11, col 5.) This city is already faced with a situation of deteriorating housing stock and a tight rental market which has resulted in spiraling rents. To impose strict liability on the landlords of this city would only exacerbate that situation. Some landlords, faced with tremendous increases in their liability insurance rates, will simply sell off or abandon their buildings. Others will be forced to increase rents in order to cover costs. In either case, it is the tenant who will be the ultimate loser.
Quoting again from Dwyer (supra, p 56), the court states “To apply the broad brush of strict liability to the landlord-tenant relationship in a dwelling house would impose an unusual and unjust burden on property owners. It would mean that the landlord would be faced with liability for every injury claim resulting from any untoward condition in every cranny of the building, whether it is reasonably forseeable or not. * * * Neither justice nor reason dictate the advisability of a change in landlord-tenant law which would permit recovery for personal injuries without proof of deviation from the standard of reasonable care.”
It is the opinion of this court that neither the intention of the Legislature nor public policy argue in favor of eliminating the requirement of notice in a tenant’s personal injury suit against the landlord. Furthermore, as Judge Levy himself acknowledges in Kaplan v Coulston (85 Misc 2d *459 745, 748, supra) “there is nothing in the history of the law of leases, or tort law or products liability that necessitates imposing a rule of strict liability upon a landlord.” We must recognize that landlords are not in the insurance business and we cannot fairly expect them to be absolute insurers of their property. As Chief Judge Cooke stated in Park West Mgt. Corp. v Mitchell (47 NY2d 316, 328), “To be sure, absent an express agreement to the contrary, a landlord is not required to ensure that the premises are in perfect or even aesthetically pleasing condition”.
Therefore, both the law and policy considerations dictate that strict liability is not a viable cause of action in this suit. For all of the above reasons, the plaintiff’s motion for summary judgment is denied and pursuant to CPLR 3211 (subd [a], par 7) plaintiff’s second cause of action is dismissed for failure to state a cause of action.