[No. A029471. First Dist., Div. One. May 6, 1987.]

LENDON C. GANEY, Plaintiff, Cross-complainant and Appellant, v. GLENEDA DORAN et al., Defendants, Cross-complainants and Appellants.
MICHAEL LIEBERMAN, et al., Defendants, Cross-defendants and Respondents.

902

**COUNSEL**

Mayer & Oswald, Gary P. Oswald and Wanden P. Treanor for Plaintiff, Cross-complainant and Appellant.

Alfred Dovbish for Defendants, Cross-complainants and Appellants.

Ronald E. Mallen, Michael P. McKisson and Long & Levit for Defendants, Cross-defendants and Respondents.

**OPINION**

**ELKINGTON, J.**—Defendants and cross-complainants Gleneda Doran and Marcus Borton (hereafter collectively referred to as Doran) appeal from the judgment entered upon a jury's verdict in favor of plaintiff and cross-respondent Lendon C. Ganey. Doran also appeals from the postjudgment order awarding Ganey costs and attorney fees. Ganey appeals "protectively" from the judgment entered on the pleadings in favor of Michael Lieberman and Harbor Center Realty, Inc. (hereafter collectively referred to as Lieberman).

We will affirm both judgments.

The essential facts are not in dispute. On August 7, 1980, Doran and Ganey entered into a residential sales agreement by which Doran agreed to purchase Ganey's house in San Rafael for $134,000. The sale was contingent upon Doran obtaining a Veterans Administration (VA) guaranteed loan in the amount of $125,000 at 11.5 percent annual interest. The agreement provided that Doran would pay a 1 percent loan origination fee while Ganey would pay any additional loan fee necessary to obtain the financing up to

a maximum of 3 percent. Accordingly, by an addendum to the sales agreement of the same date, Doran agreed to purchase "containered landscaping, for the price of $3,750, or whatever price may be negotiated per the condition of said plants at time of payment. Escrow shall not close without the satisfactory negotiation and agreement of both parties, and cash payment to Seller, of the agreed upon sums."

The sales agreement was so structured, apparently upon the advice of Lieberman, whom Ganey employed as a consultant to the transaction, because federal regulations prohibit a *lender* from charging the veteran more than a 1 percent loan origination fee. (VA Reg. 36:4312(d), part I, codified as 38 C.F.R. § 36.4312; see, *infra,* p. 907.) Any additional points, therefore, are paid generally by the seller. (See *United States* v. *Graham Mortg. Corp.* (6th Cir. 1984) 740 F.2d 414, 416, fn. 4.) In this case, however, the parties apparently agreed that the cost of the additional points would be passed on to Doran by the purchase of the containered landscaping as provided in the addendum to the sales agreement.

On September 26, 1980, Doran accordingly tendered a check in the amount of $3,750 pursuant to the addendum to the sales agreement. Ganey presented the check for payment several months later; the check was dishonored.

Meanwhile, on October 2, 1980, prior to the close of escrow, the parties signed another promissory note in which Doran agreed to pay Ganey an additional $3,150. Apparently, this note resulted from the fact that the loan origination fee exceeded the three points Ganey initially agreed to pay, Doran was unable to obtain financing at 11.5 percent, or a combination of both factors.

Doran's attorney subsequently demanded by letter that Ganey return the dishonored check and the executed promissory note, claiming essentially that the passing of loan origination fees in excess of 1 percent to Doran as *borrowers* of a VA guaranteed loan violated federal law.

In November 1981, Ganey filed a complaint for foreclosure on a vendor's lien (Civ. Code, § 3046), money due on dishonored checks (Cal. U. Com. Code, § 3122), and breach of contract (Civ. Code, § 3300). Doran cross-complained for fraud and misrepresentation, alleging that the transaction violated federal law (38 C.F.R. § 36.4312). Ganey, in turn, cross-complained against Lieberman, seeking indemnity in the event that Doran prevailed.

Prior to the start of trial, Lieberman successfully moved for a judgment on the pleadings.

Following a four-day trial, the jury returned a verdict in favor of Ganey, awarding him damages in the amount of $6,900 plus interest. Subsequently, the trial court denied Ganey's vendor's lien and entered judgment on October 4, 1984. A postjudgment order filed on April 3, 1985, awarded Ganey $11,500 in attorney fees as costs pursuant to Civil Code section 1717.

This appeal followed.

We will address Doran's appellate contentions as presented to us.

I. *Contention*: "The trial court erred or abused its discretion in granting a motion in limine which: A. Prohibited reference to violations of federal regulations or law; and B. Imposed restrictions upon appellants who were not adversaries to the parties making the motion in limine."

In open court before the jury was selected, cross-respondent Lieberman made a motion *in limine,* requesting the court to order, as here pertinent, all parties to refrain from making any reference or introducing any evidence regarding, "The alleged illegality of any aspect of this transaction or . . . [that] any aspect of this transaction . . . [is] in violation of any law or regulation. . . ." Lieberman argued that as a matter of law, title 38, section 36.4312 of the Code of Federal Regulations governed the relationship between *lenders* and *purchasers/borrowers,* but in no way did it prohibit the *seller* and the *purchaser/borrower* to contract freely regarding the cost of the points as part of the purchase price of the property.

The trial court agreed, holding that the federal regulation did not prohibit the seller from passing the loan fees or points on to the purchaser/borrower. The court therefore issued an order prohibiting the parties from referring to the transaction as being illegal or in violation of any federal law or regulation. The order did not preclude the parties from explaining to the jury why the transaction was structured as it was.

■ Doran initially argues that the trial court abused its discretion in granting the motion *in limine,* asserting that such a procedure is an improper means to determine the applicability of the regulation to the transaction. Appellants claim prejudice because the ruling amounted to "an unnoticed judgment on the pleadings," which they assert is "entirely improper" on the first day of trial.

We disagree.

The interpretation of the regulation and its application to an uncontroverted factual situation was a discrete question of law properly before the

trial judge for his determination. (*Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630]; *Lewis* v. *City of Los Angeles* (1982) 137 Cal.App.3d 518, 521 [187 Cal.Rptr. 273].) Resolving the matter before trial and issuing the resulting order was a proper exercise of the court's inherent power to entertain and grant a motion *in limine* in order to prevent objectionable evidence or testimony to come before the jury. (See 3 Witkin, Cal. Evidence (3d ed. 1986) § 2011, p. 1969, and cases cited therein.)

Were we, arguendo, to accept Doran's argument and deem the motion *in limine* to be a motion for a judgment on the pleadings, appellants' contentions still will fail.

First, there is no indication in the record before us that Doran objected to the procedure by which the applicability of the regulation was determined. Second, it has long been the rule that a motion for a judgment on the pleadings may be made in open court at any time before final judgment without prior notice. (*Morel* v. *Morel* (1928) 203 Cal. 417, 418 [264 P. 760]; *Tiffany* v. *Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 224 [162 Cal.Rptr. 669].) Doran's claim of prejudice is meritless.

■ Doran next argues that the court's interpretation of the pertinent regulation was in error as a matter of law.

Title 38, Code of Federal Regulations, section 36.4312 provides in relevant part: "(a) No charge shall be made against, or paid by, the *borrower* incident to the making of a *guaranteed* or insured loan other than those expressly permitted under paragraph (d) or (e) of this section, and no loan shall be guaranteed or insured unless the *lender* certifies to the Administrator that it has not imposed and will not impose any charges or fees against the *borrower* in excess of those permissible under paragraph (d) or (e) of this section. . . .

"(d)(2) A *lender* may charge and the *veteran* may pay a flat charge not exceeding 1 percent of the amount of the loan, provided that such flat charge shall be in lieu of all other charges relating to costs of origination not expressly specified and allowed in this schedule." (Our italics.)

Doran contends that 38 Code of Federal Regulations, section 36.4312 must be interpreted as prohibiting the purchaser/borrower from being charged more than a 1 percent loan origination fee. Doran argues that this prohibition extends to the relationship between *sellers* and *purchasers/borrowers*. Relying principally on *Young* v. *Hampton* (1951) 36 Cal.2d 799 [228 P.2d 1, 19 A.L.R.2d 830], appellants further assert that such an interpretation is compelled by the legislative intent to protect veterans

as evidenced by United States Code, title 38, section 1810(b)(5), relating to the guaranty of a loan to the veteran.[1] Doran therefore concludes that any agreement in which Ganey, as the seller, passed on the cost of the loan origination fees in excess of 1 percent to appellants, as the purchasers/borrowers is illegal and thus void. (Civ. Code, § 1667.)

The issue raised is apparently one of first impression.

■ "Generally, the same rules of construction and interpretation which apply to statutes govern the construction and interpretation of rules and regulations of administrative agencies." (*Cal. Drive-in Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028], citing *Miller* v. *United States* (1935) 294 U.S. 435 [79 L.Ed. 977, 55 S.Ct. 440]; *Guardians of Turlock's Integrity* v. *Turlock City Council* (1983) 149 Cal.App.3d 584, 595 [197 Cal.Rptr. 303].) ■ "In construing a statute 'we begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citations.] 'An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' [Citations.] Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citations.]" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)

Title 38, Code of Federal Regulations, section 36.4301, governing the definition of terms used in 38 Code of Federal Regulations, section 36.4312, defines "*guaranty*" as "the obligation of the United States, assumed by virtue of 38 U.S.C. Chapter 37, to repay a specified percentage of a loan upon the default of the primary debtor." "*Lender*" is defined as: "The *payee* or *assignee* or *transferee* of an obligation *at the time* it is *guaranteed* or insured. This term also includes any sole proprietorship, partnership, or corporation and the owners, officers and employees of a sole proprietorship, partnership, or corporation engaged in the origination, procurement, transfer, servicing, or funding of a loan which is guaranteed or insured by the VA." (Our italics.)

■ Considering 38 Code of Federal Regulations, section 36.4312 in light of the above definitions, we hold that the subject regulation by its

---

[1] 38 United States Code section 1810(b)(5) provides in relevant part: "No loan may be guaranteed under this section or made under section 1811 of this title unless . . . (5) the loan to be paid by the veteran for such property . . . does not exceed the reasonable value thereof as determined by the Administrator. . . ."

express terms prohibits only the *lender* of a *guaranteed* loan from assessing the *borrower* a loan origination fee in excess of 1 percent. We do not perceive any language within the regulation that reasonably may be interpreted as prohibiting a *seller* and the *borrower* from entering a separate agreement concerning any loan origination fees that the seller may have agreed to pay to a lender in order that the borrower may obtain a VA-guaranteed loan. (Cf. *Messitte* v. *Colonial Mortg. Service Co.* (1980) 287 Md. 289 [411 A.2d 1051, 1054].)

Our holding effectuates the congressional intent behind its amendment of 38 United States Code, section 1810(b)(5). (See fn. 1, *ante.*) Prior to 1968, subdivision (5) read "price to be paid" instead of "loan to be paid." In construing that language, our state Supreme Court determined that the purpose of the statute (then 38 U.S.C. § 694a), as well as the entire Servicemen's Readjustment Act of 1944 (presently 38 U.S.C. 1801 et seq.) of which it is a part, was to protect the veteran. The court therefore declared void as against public policy a secret agreement between a veteran/borrower and a contractor in which the veteran agreed to pay an amount in excess of the appraised value. (*Young* v. *Hampton, supra,* 36 Cal.2d 799, *passim.*)

The subsequent amendment to 38 United States Code, section 1810(b)(5), and its purpose has been discussed previously in *Gay* v. *Broder* (1980) 109 Cal.App.3d 66, 73 [167 Cal.Rptr. 123]:

"In 1968 Public Law No. 90-301, section 2(a), substituted the words 'loan to be paid' for 'price paid or to be paid' in section 1810(b)(5). The legislative history can be found in 1968 United States Code Congressional and Administrative News, page 1923. The purpose of the bill was to '*permit an eligible veteran to pay as the sale price of a home purchase such amount in excess of the reasonable value as the veteran may determine . . .*' (at p. 1924). Obviously, the provision was no longer 'to protect the borrower from acquiring the property at an exorbitant price.' It became solely a provision to protect the Veterans Administration from assuming the responsibility of a guarantor upon inadequate security." (Our italics.)

Since a veteran is now free to contract for the purchase of a residence in excess of its reasonable value and still retain eligibility for a VA-guaranteed loan, it follows that the veteran also may agree, as part of or in addition to the purchase price, to compensate the seller for any loan origination fees that the seller agreed to pay.

We accordingly discern no error in the trial court's ruling on the motion *in limine.*

■ Doran finally contends that the appellants should not have been bound by the trial court's order granting the motion *in limine* because the motion was brought by Lieberman, who was not an adverse party to the appellants.

Regardless of the merits of this contention, the record before us does not contain any indication that appellants raised this objection at the time of trial. It therefore may not be raised on appeal. (*Harding* v. *Collazo* (1986) 177 Cal.App.3d 1044, 1057 [223 Cal.Rptr. 329].)

II. *Contention*: "The trial [court] erred or abused its discretion in allowing respondent to refile his memorandum of costs."

Subsequent to the entry of judgment, Ganey filed a cost memorandum but failed to serve it on Doran. Upon discovery of the problem, Ganey then petitioned the court for permission to refile the cost memorandum pursuant to Code of Civil Procedure section 473, alleging that the failure to serve appellants stemmed from a secretarial oversight. The court granted Ganey's request, provided that he pay appellants' attorney fees that were incurred in resisting the motion.

■ On appeal, Doran argues that Code of Civil Procedure section 473 cannot be used to provide relief for the failure to serve timely a cost memorandum.

Appellants are mistaken.

Code of Civil Procedure section 473 has long been considered a proper mechanism by which a party may seek relief for failing to file timely a cost memorandum. (See, e.g., *LeDeit* v. *Ehlert* (1962) 205 Cal.App.2d 154, 169-170 [22 Cal.Rptr. 747], relied on by *Pollard* v. *Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 381 [115 Cal.Rptr. 648, 525 P.2d 88].) And, "In the absence of prejudice, the trial court has broad discretion in allowing relief on grounds of inadvertence from a failure to timely file a cost bill." (*Pollard* v. *Saxe & Yolles Dev. Co., supra,* 12 Cal.3d at p. 381.) Here, appellants have made no showing of prejudice. We discern no error.

III. *Contention*: "The trial court erred or abused its discretion by granting attorney fees: a. Where there exists no attorney fee provision; b. Which was in excess of the judgment."

The residential sales agreement provided: "In the event legal action is instituted by any party to this agreement *to enforce the terms of this agreement* or arising out of the execution of *this agreement or the sale,* the

prevailing party shall be entitled to receive from the other party a reasonable attorney fee to be determined by the court in which such action is brought." (Our italics.)

■ Doran first argues that because the attorney fees provision is included within the contractual paragraph entitled "Default," it is applicable only to default actions; since the sale was consummated and appellants took title to the property, Doran contends that the provision is inapplicable to the instant action.

It is fundamental that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) By its express terms, the attorney fee provision applies to the agreement in its entirety.

Appellants' contention therefore is meritless.

■ Doran next asserts that the trial court erred in awarding attorney fees because Ganey neither pled nor prayed for attorney fees in his complaint.

Again, appellants' assertion lacks merit.

Ganey submitted his request for attorney fees in excess of $14,000 as an item of his cost memorandum pursuant to Civil Code section 1717.[2] Relying on the statute's provisions, the trial court denied the award of attorney's fees as a cost item, requiring instead that Ganey submit a separately noticed motion requesting the fees. At the subsequent hearing, the court awarded Ganey fees in the amount of $11,500 as an additional item of cost pursuant to Civil Code section 1717.

As has been noted recently by another division of this court, "An action on a contract with an attorney fee provision . . . has not been treated by the courts as an action where the fees must be pleaded and proved at trial. Rather, the plaintiff may elect to have the court determine the fees under section 1717 as costs." (*Lanyi* v. *Goldblum* (1986) 177 Cal.App.3d 181, 187 [223 Cal.Rptr. 32].) And, "where a party's right to attorneys' fees rests on section 1717, the fact that the entire contract was before the court in the original action is a sufficient 'pleading' to authorize an attorneys' fees award.

---

[2]Civil Code section 1717 provides in relevant part: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements. . . . [¶] Reasonable attorney's fees shall be fixed by the court, upon notice and motion by a party, and shall be an element of the costs of suit. . . ."

[Citation.] That was the case here. All of the pertinent contractual documents were included in the complaint and amended complaint filed by [plaintiff], and were relied on by it as the foundation for its action." (*T.E.D. Bearing Co.* v. *Walter E. Heller & Co.* (1974) 38 Cal.App.3d 59, 64 [112 Cal.Rptr. 910].) Similarly, in this matter the sales agreement, addendum, and promissory note were incorporated by reference into the complaint. We discern no error.

■ Doran also contends that Ganey did not institute an action on the contract, as required for an award of attorney fees (Civ. Code, § 1717, subd. (a)), but merely an action to recover on a dishonored check and to collect on a promissory note. Appellants further argue that because the addendum to the sales contract, pursuant to which they had tendered the dishonored check in question, and the promissory note did not provide expressly for attorney fees, the trial court erred in awarding the fees.

Appellants' argument must fail.

"Under section 1642 of the Civil Code, it is the general rule that several papers relating to the same subject matter and executed as parts of substantially one transaction, are to be construed together as one contract. [Citation.] Thus, a note, mortgage and agreement of sale constitute one contract where they are part of the same transaction. [Citation.] The documents need not be executed contemporaneously; it is a question of fact as to whether several writings comprise one transaction." (*Nevin* v. *Salk* (1975) 45 Cal.App.3d 331, 338 [119 Cal.Rptr. 370].)

■ Here, the appellants did not provide us with a transcript of the trial proceedings. Therefore, "every presumption is in favor of the validity of the judgment and any condition of facts consistent with its validity will be presumed to have existed rather than one which will defeat it." (*Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448, 454 [85 Cal.Rptr. 809, 467 P.2d 537].)

■ Accordingly, we must presume that the sales agreement containing the attorney fees provision, the addendum to that agreement, and the promissory note were found to constitute one contract. Since we have already determined that the attorney fee provision applies to the contract in its entirety, Ganey's action to recover monies due pursuant to the addendum and to enforce the terms of the executed promissory note constitute a proper basis on which to justify the court's award of attorney fees pursuant to Civil Code section 1717.

■ Finally, appellants argue that the trial court abused its discretion in the amount of attorney fees awarded.

"It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court, whose decision cannot be reversed in the absence of an abuse of discretion. [Citations.] The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] ... The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case. [Citations.]" (*Melnyk* v. *Robledo* (1976) 64 Cal.App.3d 618, 623-624 [134 Cal.Rptr. 602].)

The record of the hearing on the motion for attorney fees indicates that the trial judge gave due consideration to a number of factors. We find no abuse of discretion.

### Ganey's Cross-appeal

As noted previously, Ganey cross-appealed the judgment on the pleadings in favor of Lieberman as a "protective" measure in the event that we found in appellant Doran's favor.

As we are upholding the judgment in favor of Ganey, we need not discuss the issues raised in the cross-appeal.

The judgment in favor of and the order awarding attorney fees to respondent Lendon C. Ganey are affirmed. Respondent Ganey's request for sanctions for the taking of a frivolous appeal is denied. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179].) Respondent is awarded costs on appeal, including reasonable attorney fees to be decided by the superior court on remand.

The judgment in favor of cross-respondents Michael Lieberman and Harbor Center Realty, Inc. is affirmed. Each party to the cross-appeal is to bear its own costs on appeal.

The matter is remanded for the sole purpose of determining attorney fees incurred on appeal by respondent Lendon C. Ganey.

Racanelli, P. J., and Holmdahl, J., concurred.