[No. A047329. First Dist., Div. Four. Aug. 21, 1990.]

SARAH T. VAERST, Plaintiff and Appellant, v.
ARNOLD TANZMAN, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B.

COUNSEL

Bronson, Bronson & McKinnon, Robert C. Gebhardt and Jary J. Hulst for Plaintiff and Appellant.

Gassett, Perry & Frank and Charles R. Roe for Defendant and Respondent.

OPINION

ANDERSON, P. J.—Plaintiff Sarah T. Vaerst (appellant) appeals from a judgment entered upon a jury verdict denying recovery in a personal injury action.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The action herein grew out of a slip-and-fall accident in a family dwelling located at 4211 Highview Drive, San Mateo, California. The residence was owned by Arnold Tanzman (respondent) and was leased to Mr. Anderson and Miss Hanson, friends of Ralph and Bodil Vaerst, appellant's son and daughter-in-law. The accident occurred on April 18, 1987, when the Vaersts were invited by the tenants for dinner and brought appellant along. The accident occurred while appellant was visiting her son and his family on April 18, 1987.

The relevant facts reveal that the Tanzmans purchased the subject property in 1971 and added a second story to it in March 1978. The addition required the construction of a stairway between the two floors. The stairway, where the injury occurred, descends from the second floor by a series of six steps to a landing. From there the stairway continues down six more steps to another flat area which, however, does not comply with the

specification of the Uniform Building Code defining a landing. On descending the stairs one can turn left to enter the garage through a door, or turn right and take an additional step into the hallway. The oak handrail, which was installed during the construction of the stairway, descends along the left side of the stairway; it continues all the way down until the end of the second series of steps; however, it terminates at the second level and leaves the final step into the hallway unprotected.

On the day of the accident, appellant was a house guest of respondent's tenants. Following dinner, she walked down the stairs to leave for home. She held onto the handrail as she descended the stairs. When the handrail ended, appellant believed she was at the end of the stairway. As she turned right to enter the hallway, she fell over the remaining step and sustained injuries including a broken hip.

Respondent, a pilot for American Airlines, had rented his residence to the tenants temporarily while he was transferred to Dallas, Texas. The evidence presented at trial further showed that the installation of the handrail in the residence was approved by the city inspector. Finally, the evidence introduced by the parties clarified that, while the downstairs area was a "little bit dark" at the time of the slip and fall, appellant, an elderly lady, had difficulty seeing and walking before the accident.

Based upon the above facts, appellant brought a personal injury action against respondent. The original complaint was predicated upon negligence and alleged in essence that respondent, the owner and the lessor of the residence, owed a duty of care to maintain the leased premises (including the steps, hallways, landing areas and stairways) in a safe condition and that the breach of duty by respondent proximately caused appellant's injury. At the beginning of trial, appellant was allowed to amend her complaint to add a cause of action for strict liability in tort. This count rested on the theory that the stairway created a dangerous condition and was defective because: (1) the handrail failed to extend to the bottom of the stairway (design defect); (2) the lighting was inadequate; and (3) there was a lack of contrast between the brown carpet covering the last step and the brown tile covering the hallway.

Prior to the voir dire of the jury, the trial court concluded that strict product liability was inapplicable to the case and refused to give instructions thereon. In addition, the trial court granted respondent's motion for a partial summary judgment (Code Civ. Proc., § 630, subd. (b)) with respect to the violation of the Uniform Building Code (UBC), and consistent therewith, refused appellant's request to give jury instructions on negligence per se.

The case thus was tried and submitted to the jury on the theory of simple negligence. Following the presentation of extensive evidence (including testimony of expert witnesses) and the receipt of proper instructions on negligence, the jury returned a verdict in favor of respondent. The appeal herein is taken from the judgment entered upon the jury verdict.

## II. DISCUSSION

Appellant contends that the judgment below should be set aside and a new trial granted because the trial court committed prejudicial error: (1) by refusing to instruct the jury on the theory of strict products liability; (2) by failing to instruct on the presumption of negligence arising from the violation of statute (UBC); and (3) by excluding expert testimony crucial to her case. We find the contentions lacking in merit and affirm.

### A. *Instruction Errors*

#### (1) *Instruction on Strict Liability Was Properly Denied by the Trial Court*

Appellant argues that respondent, as landlord of the property, was strictly liable for the injuries resulting from the alleged defects of the leased premises (*Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R.4th 601]) and, therefore, the trial court committed reversible error by refusing to instruct the jury on that theory. Appellant's contention fails for the simple reason that *Becker*, which defined the parameters of strict liability for faulty rental units, is inapplicable to the facts here presented.

In *Becker*, plaintiff, a tenant of a 36-unit apartment complex, was seriously injured when he slipped and fell against an untempered glass shower door. The defect in the frosted glass was latent and could not be detected by a layperson. Given these facts, the Supreme Court held that the landlord who owned, operated and maintained the apartment complex was strictly liable for personal injuries resulting from a latent defect of the rented premises. In the exact words of the court: "a landlord *engaged in the business of leasing dwellings* is strictly liable in tort for injuries resulting from *a latent defect* in the premises when the defect existed at the time the premises were let to the tenant." (*Becker* v. *IRM Corp., supra*, 38 Cal.3d at p. 464, italics added.) In its reasoning, the Supreme Court underlined that such liability attaches only to "landlords [who] are part of the 'overall producing and marketing enterprise'" and to tenants who are "in no position to inspect for latent defects in the increasingly complex modern apartment buildings." (*Ibid.*)

The case herein is distinguishable from *Becker* in both respects. The design defect in the handrail which allegedly caused appellant's injury was patent, visible and easily detectable by the tenants whose knowledge was imputable to appellant, their houseguest. It goes without saying that the detectability of the defect strongly militates against the imposition of strict liability. One of the principal policy reasons for making the defendant liable without fault for the plaintiff's injuries is that the injured plaintiff is powerless to defend against the hazard caused by the defective product. As stated in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897], the seminal case introducing strict liability, "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market *rather than by the injured persons who are powerless to protect themselves.*" (Italics added.) (Accord *Becker* v. *IRM Corp., supra,* 38 Cal.3d at p. 465.) Indeed, the *Becker* court itself declined to determine whether the strict liability of landlords would apply to a disclosed (i.e., not latent) defect. (*Id.* at p. 464, fn. 4.)

Second, respondent, who leased his own family residence to the tenants on a temporary basis, was not "engaged in the business of distributing goods to the public" as "an integral part of the overall producing and marketing enterprise." (*Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256, 262 [37 Cal.Rptr. 896, 391 P.2d 168]; *Tauber-Arons Auctioneers Co.* v. *Superior Court* (1980) 101 Cal.App.3d 268, 275 [161 Cal.Rptr. 789].) Rather, his act of leasing the family residence constituted an isolated transaction to which strict tort liability is inapplicable both as a matter of law and legal policy. (*Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245, 254 [85 Cal.Rptr. 178, 466 P.2d 722].) It has been repeatedly held that liability without fault applies only to mass producers or mass lessors who play more than a random or accidental role in the overall marketing enterprise. (*Ibid.*; *Tauber-Arons Auctioneers Co.* v. *Superior Court, supra,* at p. 276; *Garcia* v. *Halsett* (1970) 3 Cal.App.3d 319, 326 [82 Cal.Rptr. 420].) This fundamental principle has been reaffirmed not only by the Restatement of Torts,[1] but also by *Becker* itself which, holding the owner of the apartment complex strictly liable, has emphasized that "A landlord, *like defendant owning numerous units,* is not engaged in isolated acts within the enterprise but plays a substantial role." (*Becker* v. *IRM Corp., supra,* 38 Cal.3d at p. 464, italics added.) The implication of the latter sentence is clear: a lessor, such as respondent here, who rents his own house is not within the purview of *Becker* because he is not an entrepreneur placing his product in the chain of commerce. Therefore, the policy justification for holding the landlord

---

[1] The Restatement Second of Torts section 402A, comment f, provides in part: "The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business."

strictly liable for latent defects simply does not exist. "When the reason of a rule ceases, so should the rule itself." (Civ. Code, § 3510.)

This analysis dictates that *Becker* must be limited to its facts;[2] that strict tort liability thereunder may not be extended to instances where the lease of a house involves only an isolated act. In such a situation there is no entrepreneurial undertaking and the imposition of entrepreneurial liability would be manifestly unjustified. It follows that the trial court herein correctly held that the doctrine of strict liability was inapplicable as a matter of fact, and correctly refused to instruct the jury on that theory.

### (2) *The Violation of Statute Here Was Not a Question for the Jury*

The second instructional error assigned by appellant relates to the trial court's failure to instruct the jury on presumption of negligence (negligence per se) for an alleged violation of the UBC. Appellant's primary authority is Evidence Code[3] section 669 which provides in relevant part that "(a) The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." Appellant claims that since, pursuant to the Law Revision Commission Comments, the first two elements of the cited code section are generally questions of fact to be decided by the jury, the trial court committed prejudicial error by failing to give BAJI No. 3.45 and to seek a jury determination of whether the structure of the stairway violated the UBC. Such finding would create a presumption of negligence and would shift the burden of proof to respondent to show that he proceeded as a reasonable man would do under similar circumstances. (*Alarid* v. *Vanier* (1958) 50 Cal.2d 617, 624 [327 P.2d 897]; *Sagadin* v. *Ripper* (1985) 175 Cal.App.3d 1141, 1164 [221 Cal.Rptr. 675].) Appellant's position is not well founded.

---

[2] We note that *Becker* represents a minority view to which Chief Justice Lucas and Justice Mosk vigorously dissented. The overwhelming weight of outside authority consistently holds that the imposition of strict liability upon the landlord for latent defects in premises is unjustified in the absence of a showing that the landlord had notice or knowledge of the defect because the landlord is not an insurer of the property. (*Henderson* v. *W. C. Haas Rlty. Management, Inc.* (Mo.App. 1977) 561 S.W.2d 382; see *Meyer* v. *Parkin* (Minn. Ct. App. 1984) 350 N.W.2d 435; *George Washington University* v. *Weintraub* (D.C.App. 1983) 458 A.2d 43; *Boudreau* v. *General Elec. Co.* (1981) 2 Hawaii App. 10 [625 P.2d 384]; *Segal* v. *Justice Court Mut. Housing Co-op.* (1980) 432 N.Y.S.2d 463; *Kidd* v. *Price* (Ky. Ct. App. 1971) 461 S.W.2d 565; see also *Armstrong* v. *Cione* (1987) 69 Hawaii 176 [738 P.2d 79], where the Hawaii Supreme Court declined to follow *Becker* for legal policy reasons.)

[3] Unless otherwise indicated, all further statutory references are to the Evidence Code.

■ It is elementary that the construction of a statute, ordinance or regulation and its applicability to a situation where the facts are undisputed constitutes a question of law to be determined by the court. (*Killian* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 1, 7 [143 Cal.Rptr. 430]; see *Ganey* v. *Doran* (1987) 191 Cal.App.3d 901, 906-907 [236 Cal.Rptr. 787]; *Lewis* v. *City of Los Angeles* (1982) 137 Cal.App.3d 518, 521 [187 Cal.Rptr. 273].)

Herein the crucial issue was whether the second level or platform was a landing or a walkway. If the former, the last step leading to the hallway was a part of the stairway and, thus, should have been protected by a handrail. If the latter, the last step did not belong to the stairway because it was only one riser.[4] However, the dimensions of the second level which was determinative of the issue whether it was a landing or a walkway were undisputed. While UBC section 3305(g) required that " 'Every landing shall have a dimension measured in the direction of travel equal to the width of the stairway' " (i.e., in this case 35 x 35 inches) it was not disputed that the second level exceeded the code requirements inasmuch as it was 35 inches in width and 40 inches in depth (i.e., 5 inches more than defined by the code). Since the record herein clearly indicates that the operative facts were undisputed, the interpretation of UBC and its applicability to the present case constituted purely questions of law to be determined by the court. It follows that under the facts given the trial court properly held that the UBC was not applicable to the present instance at all and properly refused to instruct on the violation of statute.

We observe in passing that the cases cited by appellant are not dispositive because the applicability of the subject statute or ordinance therein either depended on disputed facts or, similar to the case here, the court's determination of statutory violation was upheld on appeal. For example, in *Newton* v. *Thomas* (1955) 137 Cal.App.2d 748 [291 P.2d 503], where the city ordinance prohibited crossing a roadway in any business district other than by a crosswalk, the violation of the ordinance was held to be a jury question because the definition of the business district involved a factual determination. In its reasoning the court emphasized: "Where there is no dispute as to the type and character and number of the buildings in the area, the determination of whether or not the area constitutes a business district is a question of law. However, if there is such conflict then the question becomes one of both law and fact—fact as to what and how many the buildings are—law as to whether the buildings as resolved in the conflict meet the requirements of the code. Here the trial court properly determined the question to be one of

---

[4] UBC section 420 provides that " 'A stairway is defined as two or more risers.' " Section 3305(j) of UBC in turn states that " 'Handrails shall be continuous the full length of the stairs.' "

law and fact, because there was a dispute as to the type and character of the buildings." (*Id*. at pp. 758-759.) By contrast herein, the facts were undisputed regarding the size of the second level; the conflict claimed by appellant related only to the interpretation of the various provisions of the UBC by expert witnesses—a legal dispute the determination of which belonged in the exclusive province of the trial court. In *Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 651 [151 Cal.Rptr. 399] and *Lewis* v. *City of Los Angeles, supra*, 137 Cal.App.3d 518, the reviewing court found that the court determination of the violation of statute and safety order was correct because the facts were not disputed. Significantly enough, in *Lewis* the court again underscored that "where there is no factual dispute, applicability of a given statute to a given set of facts is a question of law." (*Id*. at p. 521, fn. omitted.) Finally, *McStay* v. *Citizens Nat. T. & S. Bank* (1935) 5 Cal.App.2d 595 [43 P.2d 560] is not controlling because the issue of whether the violation of statute should have been left to court or jury was not challenged on appeal.

### B.  *Exclusion of Evidence* *

. . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Perley, J., concurred.

**POCHÉ, J.**—I respectfully dissent. Until now I had understood the role of this court when faced with higher authority to be that of saluting and following orders. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) The majority opinion, instead, concludes that *Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R.4th 601], represents merely a "minority view," disagrees with it and purports to limit it to its facts in order to avoid its holding. (Maj. opn., *ante*, p. 1541, fn. 2.)

Plaintiff, a woman in her late 80's, fell while descending a dimly lit stairway in a rental unit owned by defendant who had taken an active role in the design and construction of the stairs. The stairs had a handrail running along the left wall, down the first flight, across the first landing, down the second flight, but stopping at the second landing. From the second landing there was a last step down to ground level. As plaintiff descended the stairs she held onto the handrail. When the handrail ended at the

---

* See footnote, *ante*, page 1535.

second landing she assumed there were no more steps. There were: as she turned to her right to enter the hallway she stepped into mid-air, falling and breaking her hip. The handrail had ended, the stairs had not.

In reliance upon *Becker* v. *IRM Corp.*, plaintiff amended her complaint to state a cause of action for strict liability on the theory that the stairway was defectively designed. She alleged that the design defect consisted, first, of the handrail which was shorter than the full flight of stairs and placed on the wrong wall; second, of dim lighting in the stairway; third, of a lack of contrast between the brown carpeting on the stairs and the brown tile flooring in the hallway at their base. In sum, the defect here was not a manufacturing flaw in the handrail itself, but a defect in the railing's suitability for a stairway of this configuration, lighting and decor. (See *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 428-432 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].)

The majority opinion holds that strict liability has no application here. It does so despite the holding in *Becker* v. *IRM Corp., supra,* 38 Cal.3d 454, 464, that the owner of a 36-unit apartment complex was strictly liable in tort for injuries resulting from a latent defect existing at the time the premises were let to the injured tenant. The majority concludes that *"Becker* must be limited to its facts; that strict tort liability thereunder may not be extended to instances where the lease of a house involves only an isolated act. In such a situation there is no entrepreneurial undertaking and the imposition of entrepreneurial liability would be manifestly unjustified." (Maj. opn., *ante*, p. 1541, fn. omitted.)

Not even the dissenters in *Becker* believed that the decision could be so limited. Indeed, then Justice Lucas noted that under the majority's holding "those who decide to rent out the family home on a regular basis are also now strictly liable for defects in any item located therein. Under the majority's formulation, where the relevant relationship is that of landlord to his property and tenants, any landlord is now strictly liable for defects of which he or she has no knowledge or reason to know and which appear in any part of the property no matter how esoteric the understanding necessary to comprehend the working of that part. Nothing in the majority's approach is necessarily confined to landlords of multiple residences." (38 Cal.3d at pp. 483-484, fn. omitted.)

When even the dissenting members of our Supreme Court conclude that a decision of that court cannot be limited to its facts, where does a lower court derive its authority to ignore the Supreme Court's holding, straight-arm the rationale of the decision, and limit the decision to its facts?

Even if I could accept the appropriateness of the majority's approach, the opinion must make major factual assumptions in order to justify its result. As an initial matter the majority opinion concludes, without discussion, that the design defect was patent. (Maj. opn., *ante*, p. 1540.) Neither in the record below nor in their briefs to this court have the parties contended that the design defect was patent, which is defined as open, exposed, evident to public inspection, open to view, readily visible or intelligible. (*Baker* v. *Walker & Walker Inc.* (1982) 133 Cal.App.3d 746, 762 [184 Cal.Rptr. 245].) Whether an architectural design defect is patent or latent is to be determined by looking at the totality of the circumstances in order to conclude whether the defect should have been cognizable to the user. (*Mattingly* v. *Anthony Industries, Inc.* (1980) 109 Cal.App.3d 506, 511 [167 Cal.Rptr. 292]; *Barnes* v. *Innis-Tennebaum Architects, Inc.* (1990) 221 Cal.App.3d 1314 [271 Cal.Rptr. 92].)

Since the contention here is that the design defect consisted not simply in a handrail that stopped before the end of the stairs, but in the overall design of the stairs, I cannot say as a matter of law in a case where the issue was excluded at the outset of trial that the defect, if any, for the issue is a question of fact (*Sandoval* v. *Superior Court* (1983) 140 Cal.App.3d 932, 944 [190 Cal.Rptr. 29]), was patent.

The question of whether strict liability could also be imposed for patent or for disclosed defects was expressly left open in *Becker*. (*Becker* v. *IRM Corp., supra*, 38 Cal.3d at p. 464, fn. 4.) However, that opinion implies by an explicit reference to *Luque* v. *McLean* (1972) 8 Cal.3d 136, 141-146 [104 Cal.Rptr. 443, 501 P.2d 1163], that a patent defect would not defeat liability, but would merely be a defense relevant to the apportionment of damages under principles of comparative fault. (*Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 742 [144 Cal.Rptr. 380, 575 P.2d 1162]; *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322, 332 [146 Cal.Rptr. 550, 579 P.2d 441].)

Seizing upon its own factual finding that the defect was patent, the majority opinion then asserts without citation to authority that knowledge of the defect is "imputable to appellant, their houseguest." (Maj. opn., *ante*, p. 1540.) The only authority I can find in support of this contention is *Hanson* v. *Luft* (1962) 58 Cal.2d 443, 445 [24 Cal.Rptr. 681, 374 P.2d 641]. That case predates the modern analysis for questions of possessor of land liability as developed in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], and in *Becker* v. *IRM Corp., supra*, 38 Cal.3d at page 465. Thus, I question its current validity.

Even if I were to assume, however, that the defect was patent and that knowledge of it could be imputed to plaintiff as a guest of the tenants, plaintiff's recovery would only be precluded if her own negligence in the face of that patent defect was such as to become a superseding cause of her injury. (*Edwards* v. *California Sports, Inc.* (1988) 206 Cal.App.3d 1284, 1288-1289 [254 Cal.Rptr. 170]; *Paverud* v. *Niagara Machine & Tool Works* (1987) 189 Cal.App.3d 858, 861-862 [234 Cal.Rptr. 585].) The existence of a superseding cause is a question of fact. (*Balido* v. *Improved Machinery, Inc.* (1972) 29 Cal.App.3d 633, 645 [105 Cal.Rptr. 890].)

Just as the majority opinion decides without evidence that the defect here was patent, it also decides that Tanzman "who leased his own family residence to the tenants on a temporary basis" was therefore not " 'engaged in the business of distributing goods to the public' as 'an integral part of the overall producing and marketing enterprise.' " (Maj. opn., *ante*, p. 1540.) At the time of trial Tanzman had not been living in the house for two years and was only predicting his return to it "within the next couple years." The opinion uses its factual finding to conclude that the rationale for imposing strict liability upon a landlord does not exist here.

Admittedly, it can be argued that there are policy reasons the Supreme Court could have used to limit its holding in *Becker* to landlords of large rental complexes or those whose holdings consisted of multiple units. Quite aside from the fact that the *Becker* opinion did not so limit its holding, the rationale for strict liability enunciated in *Becker* applies here with even greater force than to the fact pattern in that case. In *Becker* the owner of the complex had purchased the building some nine years after its completion. (*Becker* v. *IRM Corp., supra*, 38 Cal.3d at pp. 457-458.) Using standard strict liability analysis the Supreme Court concluded that the apartment owner there was, in effect, a retailer in the business of leasing apartments who was thus in the marketing enterprise by which the defective product (a shower door) reached the user public. (*Id.* at p. 476.)

Mr. Tanzman is a much less remote link in the commercial chain. Unlike the owner in *Becker*, Tanzman built the stairway in question and thus stands more nearly in the position of a manufacturer of a defective product—the stairway. One of the issues which troubled the dissenters in *Becker* was application of strict liability to subsequent owners rather than to builders of the property. (*Becker* v. *IRM Corp., supra*, 38 Cal.3d at p. 483.) I can only conclude that the rationale of *Becker*'s imposition of strict liability upon the owner of a "used" building applies with redoubled force to Tanzman as the builder of the allegedly defective stairs.

For these reasons I would reverse the judgment on the ground that plaintiff was denied instructions on strict liability to which she was entitled.

A petition for a rehearing was denied September 19, 1990, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 20, 1990. Mosk, J., was of the opinion that the petition should be granted.